**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Priscilla J. DETERS, Defendant—
Appellant.**

No. 97–3334.

United States Court of Appeals,
Tenth Circuit.

May 1, 1998.

578

David J. Phillips, Federal Public Defender, and Steven K. Gradert, Assistant Federal Public Defender, District of Kansas, Wichita, KS, for Defendant–Appellant.

Jackie N. Williams, U.S. Attorney, and Annette B. Gurney, Assistant U.S. Attorney, Office of United States Attorney, Wichita, KS, for Plaintiff–Appellee.

Before: TACHA, McWILLIAMS, and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

The defendant, Priscilla J. Deters, was indicted on various counts of mail and wire fraud. Before trial, the defendant's counsel requested that a psychiatric examination be performed on the defendant in order to determine her mental competency to stand trial and to evaluate her degree of sanity at the time of the alleged crimes, pursuant to 18 U.S.C. §§ 4241 and 4242. Although the statutory scheme allows courts to temporarily confine defendants during such psychiatric evaluations, *see id.* § 4247(b), the defendant asked to be examined on an outpatient basis. The court granted the defendant's motion for the mental examinations but ordered that she be taken into custody and sent to Carswell, Texas,[1] for the purpose of those exams.

The defendant immediately appealed the commitment order on the basis that it violated the Constitution by depriving her of liberty without due process of law.[2] The

commitment order issued under 18 U.S.C. § 4247(b) lasts a maximum of forty-five days, with a possible thirty-day extension upon a showing of good cause for the extension. Such an order will rarely if ever outlive the appellate process. This case, therefore, is "capable of repetition, yet evading review" and hence is justiciable. *United States v. Boigegrain*, 122 F.3d 1345, 1347 n. 1 (10th Cir.1997) (en banc) (per curiam) (citations and internal quotation marks omitted).

1. Defendant has since been confined in several different facilities and, at the time the briefs in this case were filed, was detained at a facility in Chicago.

2. Although the defendant's initial commitment period has expired, this case is not moot. A

government urges us not to reach the merits of this appeal. According to the government, the commitment order is not a final order, and therefore we have no jurisdiction to review it at this time. The government also argues, in the alternative, that the confinement order did not violate the defendant's constitutional rights. We conclude that we do have jurisdiction over this appeal. Addressing the merits of the appeal, we conclude that there is no constitutional violation, and we affirm the order of the district court.

## I. Jurisdiction

The threshold issue in this case is whether the commitment order is immediately appealable. Circuit courts, such as ours, have jurisdiction only over appeals from "final decisions" of the district courts. 28 U.S.C. § 1291. Generally, in criminal cases this rule requires that a defendant await conviction and sentencing before raising an appeal. *See Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 1053–54, 79 L.Ed.2d 288 (1984). The policies supporting the final judgment rule include preserving respect for trial judges, reducing the ability of litigants to harass each other, and enhancing the efficient administration of justice. *See id.* at 264, 104 S.Ct. at 1054. Because these policies are at their strongest in the criminal context, the final judgment rule applies "with the utmost strictness in criminal cases." *Id.* at 265, 104 S.Ct. at 1055. Courts depart from the final judgment rule only in those few circumstances "when observance of it would practically defeat the right to any review at all." *Cobbledick v. United States*, 309 U.S. 323, 324–25, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940) (quoted in *Flanagan*, 465 U.S. at 265, 104 S.Ct. at 1054).

■ In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court set forth the criteria that an order must meet to be appealed prior to a final judgment. Under the "collateral order" doctrine, a litigant may only seek immediate review of orders that: (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) are "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978); *see also id.* at 468 n. 10, 98 S.Ct. at 2458 n. 10 (citing *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225).

The district court in this case ordered commitment for two purposes: to evaluate the defendant's competency to stand trial, and to determine her sanity at the time of the offense. We examine the appealability of the order separately for each of these purposes.

A. *Commitment For Purposes of Section 4241 (Evaluating Competency to Stand Trial)*

■ The order that the court issued is often referred to as a "first step" or "step-one" order in section 4241 cases, because it represents the first of a three-step system for determining the competency of a defendant to stand trial. *See United States v. Barth*, 28 F.3d 253, 255 (2d Cir.1994); *United States v. Weissberger*, 951 F.2d 392, 395–96 (D.C.Cir.1991) (describing the three-step process). The government cannot prosecute a defendant who is mentally "incompetent"— that is, "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). In order to understand the question at issue in this case, it is necessary to understand the three-step system for determining competency.

At the first step, the court must decide whether there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent...." *Id.* Whenever a court has reasonable cause to question the defendant's competency, it may order a psychiatric or psychological examination of the defendant. *See id.* § 4241(b); *Weissberger*, 951 F.2d at 395. The district court also has the discretion to confine a defendant during the examination period. *See* 18 U.S.C. § 4247(b). The statute states that "[f]or the purposes of an examination pursuant to an order under section 4241, ... the court *may* commit the person to be examined for a reasonable period, but not to exceed thirty days." *Id.* (emphasis added).

The director of the facility may obtain an extension lasting no longer than fifteen days upon a showing of good cause. *Id.*

At step two, the court conducts a hearing and uses the psychological reports from the step-one examination to determine whether the defendant is able to understand the nature and consequences of the proceedings against her. If not, the defendant is incompetent to stand trial, and the court must order the defendant hospitalized for a reasonable period of time (up to four months) for the purpose of determining whether there is a "substantial probability" that the defendant will become competent in the foreseeable future. *See id.* § 4241(d). If the court finds that this substantial probability exists, the defendant's "step-two" confinement may be extended for an "additional reasonable period of time" to allow him to gain the capacity for trial. *See id.* at § 4241(d)(2).

The third step occurs at the end of the second confinement period. At this stage, the court determines whether the defendant has become competent to stand trial or, alternatively, is a long-term incompetent requiring indefinite hospitalization. *See id.* §§ 4241(d), 4246; *United States v. Charters,* 829 F.2d 479, 485 (4th Cir.1987).

In *United States v. Cheama,* 730 F.2d 1383 (10th Cir.1984), we held that a party could not take an immediate appeal of a step-two order. We later overruled *Cheama,* holding that step-two orders meet all three of *Cohen*'s criteria and are immediately appealable. *See United States v. Boigegrain,* 122 F.3d 1345, 1349 (10th Cir.1997) (en banc) (per curiam). This ruling brought our circuit into line with the majority of circuits that have decided that issue. *See id.* at 1348 (citing cases). At that time, however, we declined to express an opinion on the applicability of *Cohen* to step-one orders. *See id.* at 1349.

Other circuits that have addressed the appealability of step-one orders have found those immediately reviewable also. *See United States v. Davis,* 93 F.3d 1286, 1288–89 (6th Cir.1996); *United States v. Weissberger,* 951 F.2d 392, 396–97 (D.C.Cir.1991); *but see United States v. Barth,* 28 F.3d 253, 255–56 (2d Cir.1994). We agree that a step-one commitment order "easily satisfies the requirements of the collateral order doctrine." *Davis,* 93 F.3d at 1289; *see also Weissberger,* 951 F.2d at 396 ("[t]he District Court's decision to hold [the defendant] in confinement for up to thirty days ... easily satisfies the *Cohen* test for appealability as a collateral order.").

As noted above, the first prong of the *Cohen* test requires that the order being appealed "conclusively determine the disputed question." *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2458. The government argues that the order in this case does not conclusively determine whether the defendant is competent to stand trial and therefore does not satisfy the first of the *Cohen* criteria. The government's position rests on a misunderstanding of the "disputed question" in this appeal. It is true, as the government suggests, that the appealed order does not conclusively determine the defendant's competency. The step-one order is merely "a preliminary step that will promptly return the matter to the District Court for an ultimate determination" on competency at step two. *Barth,* 28 F.3d at 255. Thus, if the issue were the defendant's competency, there would be room to argue that the order is inconclusive.[3]

The defendant's competency, however, is not the disputed question in this case. In order to determine what the disputed question is, "we must examine the grounds for [the] appeal." *Ortiz v. Dodge,* 126 F.3d 545, 549 (3d Cir.1997). Only by identifying the precise issue being appealed can a court decide whether that issue has been conclusively determined, and, consequently, whether the

---

**3.** *United States v. Davis,* 93 F.3d 1286 (6th Cir. 1996), is an example of a case in which the disputed question did involve the defendant's competency. There, the defendant appealed a first-step order on the basis that there was no reasonable cause to believe she was incompetent and therefore no need for an examination. *See id.* at 1289–90. The Sixth Circuit found that the order conclusively determined the disputed question, even though first-step orders do not make a final determination on competency. *See Davis,* 93 F.3d at 1289 ("[T]he order here conclusively determines ... there should be an examination of the defendant's competency to stand trial....").

second *Cohen* factor has been satisfied.[4] Here, the defendant has only one ground for appeal—namely, that her *confinement* during the preliminary evaluation period violated her constitutional liberty interest. Contrary to the government's characterization, the "disputed question" is not whether there were grounds to conduct a psychiatric examination, but whether the defendant should have been confined during that examination.

There is no doubt that the district court's order conclusively determined that the defendant would be confined during her initial examination. The court ordered that Deters be taken into custody and sent to Carswell, and there is no indication in either the record or the statutory scheme that the court had any plans to revisit that decision.

The order also "resolve[d] an important issue completely separate from the merits of the action," as required by *Cohen*. *Coopers & Lybrand v. Livesay*, 437 U.S. at 468, 98 S.Ct. at 2458. The issue is important because the defendant's liberty will be curtailed for up to forty-five days. *Cf. Boigegrain*, 122 F.3d at 1349 (characterizing § 4241(d) commitment of four months or more as an "immediate and significant loss of personal liberty"). It is also completely separate from the merits. The constitutional issue presented on appeal requires us to balance the individual's liberty interest against the legitimate interests of the government. That issue of course has no bearing on whether the defendant committed mail or wire fraud, or even the psychological issues that might come up during trial, such as whether she was legally insane at the time of the offense. *See Cohen*, 337 U.S. at 546–47, 69 S.Ct. at 1226 (holding that an order is appealable where the issue on appeal "is not an ingredient of the cause of action and does not require consideration with it").

Finally, as the government apparently concedes, the order is "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. at 2458. In *Weissberger*, the D.C. Circuit explained why the confinement associated with a step-one commitment order is "effectively unreviewable":

> [A]n appeal from a competency evaluation order is analogous to an appeal from a denial of bail. If appeal is not allowed from an order requiring pretrial detention, there can be no remedy for the resulting loss of liberty. The issue becomes moot upon conviction and sentence. The same is true here.... [P]ost-confinement review will provide no relief for the loss of liberty associated with the competency evaluation.

*Weissberger*, 951 F.2d at 396–97 (citations omitted). We adopted that reasoning in *Boigegrain*, *see* 122 F.3d at 1348–49 (quoting *Weissberger*), and we further stated that "[a] defendant must not be left without recourse to appellate review where there is an immediate and significant loss of personal liberty," *id.* at 1349. Here, as in *Boigegrain*, the defendant faces "an immediate and significant loss of personal liberty"—a month and a half of involuntary confinement—and should not be left without recourse.

Thus, a commitment order issued for the purpose of obtaining an evaluation of the defendant's competency to stand trial as described in 18 U.S.C. § 4241(b) may be immediately appealed.

### B. Commitment for Purposes of Section 4242 (Determining Defendant's Degree of Sanity at the Time of the Offense)

■ Our *Cohen* analysis is much the same when we examine the appealability of the

---

4. The Supreme Court has recognized the need to identify the issue on appeal with particularity. For example, in two cases dealing with qualified immunity, the Court made it clear that the result of the *Cohen* test may turn on what issue the appellant raises. A public official asserting the defense of qualified immunity must prove that her actions were reasonable in light of clearly established law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Court has allowed a public official asserting the defense of qualified immunity to immediately appeal a denial of summary judgment if the official appeals on the grounds that the law allegedly violated was not "clearly established." *See Mitchell v. Forsyth*, 472 U.S. 511, 528–30, 105 S.Ct. 2806, 2816–18, 86 L.Ed.2d 411 (1985). The Court, however, has refused to allow an immediate appeal if the official appeals on the grounds that the plaintiff's evidence was insufficient to prove the official's alleged conduct. *See Johnson v. Jones*, 515 U.S. 304, 313, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995). In the latter case, but not the former, the summary judgment decision "was not a 'final decision'" with regard to the issue appealed. *Id.*

order from the perspective of its other purpose, that is, obtaining an evaluation of the defendant's sanity at the time of the offense.

The order satisfies the first of the *Cohen* criteria because it "conclusively determine[s] the disputed question." *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2458. The disputed question, again, is the decision to confine the defendant, not the underlying decision to conduct an examination. The order represents the district court's final decision on the matter of confinement and hence conclusively determines the issue.

Moreover, the order "resolve[d] an important issue completely separate from the merits of the action," as required by the second *Cohen* prong. *Id.* The confinement for evaluation regarding sanity at the time of the offense is both an important issue, because it involves Ms. Deters' personal liberty interest, and is completely separate from the merits of the mail and wire fraud charges. Her liberty interest is even more significant when the order is based on section 4242 than it is from the perspective of section 4241. The statutory scheme allows confinement of up to seventy-five days for a section 4242 evaluation—forty-five days plus a possible thirty-day extension—as compared to a maximum confinement of forty-five days for a section 4241 evaluation. *See* 18 U.S.C. § 4247(b).

Finally, the order is "effectively unreviewable on appeal from a final judgment," as required by the third part of the *Cohen* test. *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2458. As with an evaluation under section 4241, if we required the defendant to wait for a final judgment on the criminal charges before she could appeal her pre-trial confinement, our review could not provide relief for the loss of liberty she had experienced as a result of the section 4242 evaluation and commitment.

Thus, a commitment order issued pursuant to section 4247(b) for the purpose of section 4242, that is, evaluation of a defendant's sanity at the time of the offense, is immediately appealable; the defendant need not wait for a final judgment on the criminal charges.

In sum, we hold that a commitment order issued pursuant to 18 U.S.C. § 4247(b), whether it be for the purpose of ascertaining competency to stand trial under section 4241 or for the purpose of evaluating insanity at the time of the offense under section 4242, is immediately appealable. We limit our holding to the circumstances presented here, where the defendant is contesting the district court's decision to confine her during the evaluation period and is not basing her appeal on the underlying decision to conduct an evaluation. In a situation where a defendant is appealing a section 4247(b) order on the basis that the examination is unnecessary, the disputed question would be different and thus a different analysis would be required.

## II. Due Process

■ Addressing the merits of Deters's appeal, we conclude that the commitment order issued by the district court does not violate the Due Process Clause. The Due Process Clause has both a procedural and a substantive component. When government action deprives a person of life, liberty, or property without fair procedures, it violates procedural due process. *See United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 2101–02, 95 L.Ed.2d 697 (1987). The defendant does not complain of a lack of procedure; thus, she does not implicate the procedural component of the Due Process Clause.

■ Unlike procedural due process, substantive due process protects a small number of "fundamental rights" from government interference regardless of the procedures used. *See, e.g., Washington v. Glucksberg,* —— U.S. ——, ——, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997) (describing fundamental rights as those that are "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed") (citations and internal quotation marks omitted). In general, governmental action infringing upon a fundamental right will not survive judicial scrutiny unless it serves a compelling state interest and is narrowly tailored to effect that interest. *See id.* at ——, 117 S.Ct. at 2268.

■ The Supreme Court has observed that an individual's "strong interest in liberty" is of a "fundamental nature." *Salerno,*

481 U.S. at 750, 107 S.Ct. at 2103. To protect this interest, the Due Process Clause prevents the government from arbitrarily confining individuals against their will. *See Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 1785–86, 118 L.Ed.2d 437 (1992). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno,* 481 U.S. at 755, 107 S.Ct. at 2105. Of course, the interest in liberty, like other interests, is not absolute. *See id.* at 751, 107 S.Ct. at 2103–04. Under certain circumstances, the government may detain criminal defendants prior to trial without offending the Due Process Clause. *See Salerno,* 481 U.S. at 748–51, 107 S.Ct. at 2102–04 (upholding provisions of Bail Reform Act that allow pretrial detention when government demonstrates defendant's dangerousness to the community); *Bell v. Wolfish,* 441 U.S. 520, 534, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979) (noting that government may detain defendant to ensure his appearance at trial).

However, the Supreme Court has not articulated a clear test for determining when pretrial confinement of an accused is permissible under the Due Process Clause. In *Salerno,* the Court noted that the government's interest in community safety was "legitimate and compelling," *see id.* at 749, 107 S.Ct. at 2103, but it did not appear to apply the narrowly-tailored-to-serve-a-compelling government-interest test that traditionally governs cases involving fundamental rights. Rather, it seems to have applied a general balancing test in each case. The Court stated: "[A]s our cases hold, this right [to liberty] may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society." *Salerno,* 481 U.S. at 750–51, 107 S.Ct. at 2103. Similarly, in *Foucha,* the Court repeated *Salerno*'s observation that the government has a "legitimate and compelling" interest in preventing crime but did not explicitly apply the traditional test for fundamental rights. *See Foucha,* 504 U.S. at 80–82, 112 S.Ct. at 1785–87 (holding that once insanity acquittee was determined to have regained sanity, state's fear of his future dangerousness "is not enough to defeat [his] liberty interest under the Constitution in be-

ing freed from indefinite confinement in a mental facility"). The uncertainty over the appropriate constitutional test in this area is exacerbated by the fact that none of the Supreme Court's cases deals with the precise government restriction presented here: the detainment of an individual prior to trial for the purpose of obtaining a mental evaluation. Nonetheless, at least this much can be said: "The institutionalization of an adult by the government triggers heightened, substantive due process scrutiny. There must be a 'sufficiently compelling' governmental interest to justify such action...." *Reno v. Flores,* 507 U.S. 292, 316, 113 S.Ct. 1439, 1454, 123 L.Ed.2d 1 (1993) (O'Connor, J., concurring) (quoting *Salerno,* 481 U.S. at 748, 107 S.Ct. at 2102).

In support of her position that psychological exams must be performed in the least restrictive manner—that is, on an outpatient basis—the defendant relies on *In re Newchurch,* 807 F.2d 404, 408 (5th Cir.1986), a case addressing the precise question presented here. *Newchurch,* however, actually cuts against the defendant by acknowledging that detention is permissible if it "is reasonably necessary to assure [the accused's] presence at trial or to protect some other important governmental interest." *Id.* at 408–09 (footnote omitted).

The precise contours of the government's burden here—whether it be demonstrating that Ms. Deters's detention was a narrowly tailored means of achieving a compelling government interest, or a reasonably necessary means of achieving an important government interest, as *Newchurch* holds, or some other formulation of the Due Process standard—do not alter the outcome of this case. Here, the district court identified at least two "sufficiently compelling" reasons to justify detaining the defendant during her examination.

First, the government "has a substantial interest in ensuring that persons accused of crimes are available for trials," and confinement is "a legitimate means of furthering that interest." *See Bell,* 441 U.S. at 534, 99 S.Ct. at 1871. The district court expressed legitimate concern that an outpatient exam presented the risk that the defendant would

584

not appear for trial. The defendant was living in California pending her trial in Kansas, and the defense requested that her outpatient exam take place in California. The distance between the two states raises the possibility that the defendant would not have returned after her exam. Furthermore, the district court pointed out that the defendant's living conditions in California were unstable: she had no money, was unemployed, and lived with friends and family who had been providing for her needs. These circumstances suggest that the defendant may have been unable to return to Kansas, even if she desired to do so. Also, the transitory nature of the defendant's living conditions would have complicated any attempt to contact or locate her in California. Moreover, the court noted that a case agent had had great difficulty locating the defendant prior to her appearance in court. In light of these circumstances, the district court reasonably was concerned about the possibility that the defendant would not return from California.

The district court seriously considered the defendant's alternative request that she be examined on an outpatient basis in Kansas. The defendant, however, could not assure the district court that she could secure a place to stay in Kansas during the examination period. The district court then inquired into the availability of rooms at a local halfway house. Only when defense counsel informed the court that there was no room at the halfway house did the court make its final decision to commit the defendant to a federal medical facility for the duration of her exam.

Second, the government has a strong interest in providing the defendant with a speedy trial. Defendants, of course, have a fundamental right to a speedy trial. *See* U.S. CONST. amend. VI; *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). The interest in a speedy trial is held not only by the defendant, however, but also by the government. "[S]ociety has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest." *Id.* at 527, 92 S.Ct. at 2190; *see also id.* at 519–20, 92 S.Ct. at 2186–87. Courts and prosecutors have "the primary burden ... to assure

that cases are brought to trial" in a timely manner. *Id.* at 529, 92 S.Ct. at 2191.

The district court noted at the hearing that almost 300 days had passed since the filing of the indictment in this case. Indeed, the defendant had raised the issue of psychiatric examinations late in the proceedings. Granting the defendant's original request—which was for a continuance to obtain a psychological examination from a doctor in California—could have lead to further delay. For instance, the prosecution indicated that if the defendant were examined by the doctor in California on the defendant's own initiative (i.e., rather than upon an order from the district court), the prosecution would have requested a re-examination with a doctor more familiar to the prosecution. The district court knew that it could avoid this potential delay by ordering the examinations itself and ordering that they be performed by doctors in the federal facilities, whose impartiality and qualifications were less likely to be questioned by either side.

The government interests at stake in this case were "sufficiently weighty," *Salerno,* 481 U.S. at 750–51, 107 S.Ct. at 2103, to override the individual liberty interest of the defendant. The commitment order, therefore, does not violate Deters's due process rights.

### Conclusion

■ In ordering commitment pursuant to 18 U.S.C. § 4241, a "district court should make findings of fact concerning the need for commitment," and "[a]n appellate court should give appropriate deference not only to these findings but also to the conclusion reached by the district court" regarding the appropriateness of confinement. *In re Newchurch,* 807 F.2d at 412. Here, the district court articulated sound reasons for ordering commitment. There is no reason to overturn the district court's decision in this case, much less to find that it was unconstitutional.

The order of the district court is AFFIRMED.