**UNITED STATES of America**

v.

**Russell Eugene WESTON, Jr., Defendant.**

**No. CR.A. 98–357(EGS).**

United States District Court, District of Columbia.

May 1, 2003.

Ronald Walutes, Esq., David Goodhand, Esq., Assistant United States Attorneys, Washington.

A.J. Kramer, Esq., Federal Public Defender, Gregory L. Poe, Esq., Assistant Federal Public Defender, Washington.

George B. Walsh, United States Marshal, United States Courthouse, Washington.

Harley G. Lappin, Director, Federal Bureau of Prisons, Washington.

Dr. Cary N. Mack, Clinical Psychologist, Deputy Chief of Psychiatry, Health Services Division, Federal Bureau of Prisons, Washington.

### *MEMORANDUM OPINION AND ORDER*

SULLIVAN, District Judge.

**INTRODUCTION**

Pending before the Court is the government's motion pursuant to 18 U.S.C.

§ 4241(d)(2)(2000) to extend defendant's hospitalization for an additional period of one year in order to continue his medical treatment. The Court is charged with determining, in the first instance, whether the government has met its burden of proving that a substantial likelihood exists that Mr. Weston will regain competency within the foreseeable future. If the Court determines that the government has indeed offered sufficient proof, it must address the question whether the requested additional period of one year is reasonable.

In support of its motion, and relying upon 18 U.S.C. § 4241(d)(2), the government contends that "there is a substantial probability that . . . [defendant] will attain the capacity to permit the trial to proceed" within the proposed period of time. Gov't. Mot. at 1. Mr. Weston opposes the government's request, arguing primarily that there is no evidentiary basis on which to grant the motion and no support in legislative or case law for the proposition that one year is a reasonable period of time as a matter of "predictive judgment." Def.'s Opp'n at 3–4.

Upon consideration of the motion, the response and reply thereto, as well as oral arguments and the relevant statutory and case law governing the issues, it is by the Court hereby

**ORDERED** that the government's motion is **GRANTED** and that Mr. Weston's hospitalization and treatment are continued for an additional period of one year from **November 19, 2002,** the date of the filing of the pending motion, until **November 19, 2003;** and it is further

**ORDERED** that a supplemental evidentiary hearing is scheduled for **June 17, 2003, at 10:00 a.m.,** in Courtroom #1 of the United States District Court for the District of Columbia to consider further evidence relating to defendant's medication since **November 19, 2002,** his response to further medication and any current opinions on the issue of his attainment of competency or lack thereof and his prognosis for attainment of competency to participate in future legal proceedings.

## BACKGROUND

*Procedural History*

On October 9, 1998, defendant Russell Eugene Weston, Jr. was charged in a six-count indictment with murdering two United States Capitol Police Officers and attempting to murder a third officer on July 24, 1998.

On April 22, 1999, the Court ruled that Mr. Weston was incompetent to stand trial and ordered him committed to the custody of the Attorney General "for treatment in a suitable facility," pursuant to 18 U.S.C. § 4241(d). The Court's order further provided that antipsychotic medication could not be administered to Mr. Weston without the prior approval of the Court.

On May 5, 1999, Mr. Weston was admitted to the Health Services Division of the Federal Correctional Institution in Butner, North Carolina ("Butner"). Following his admission to Butner, he refused to voluntarily take the antipsychotic medication prescribed by Dr. Sally Johnson of the Bureau of Prisons ("BOP"), a psychiatrist in the United States Public Health Service tasked with Mr. Weston's case.

On March 6, 2001, following (1) several administrative and judicial hearings, (2) an interlocutory appeal of this Court's first ruling authorizing the defendant's involuntary treatment with antipsychotic medication, (3) a multi-day evidentiary hearing following a remand for further factfinding, and (4) the preparation and submission of a report from a court-appointed expert this Court authorized the BOP to involuntarily treat the defendant with antipsychotic medication. 134 F.Supp.2d 115, 116 (D.D.C.2001). This decision was ultimate-

ly affirmed by a panel of the United States Court of Appeals for the District of Columbia Circuit. 255 F.3d 873, 877 (D.C.Cir. 2001). Thereafter, the U.S. Supreme Court denied defendant's petition for a writ of *certiorari* to review the Circuit Court's ruling. Accordingly, the BOP began treating the defendant with antipsychotic medication on January 30, 2002.

Status reports were submitted each month thereafter and, on or about June 6, 2002, the government requested a 120–day extension under 18 U.S.C. § 4241(d) for the purpose of continuing Mr. Weston's course of treatment with antipsychotic medication. Mr. Weston objected to continued commitment and requested an evidentiary hearing.

On August 1, 2002, the Court held such a hearing and heard uncontroverted testimony from Dr. Johnson. The status reports submitted by the BOP to the time of the hearing, along with various institutional documents relating to Mr. Weston, were admitted into the evidentiary record.

On August 2, 2002, the Court issued an order granting the government's request to extend Mr. Weston's treatment for an additional 120–day period under 18 U.S.C. § 4241(d) (with the additional period commencing on August 2, 2002). *See United States v. Weston,* 211 F.Supp.2d 182 (D.D.C.2002). In its order, the Court scheduled a hearing for November 19, 2002, at Butner. *Id.*

On October 24, 2002, the government filed a motion and requested an additional one-year extension under 18 U.S.C. § 4241(d). Defendant opposed that motion.

The Court, Mr. Weston, counsel for the parties, Dr. Johnson, and a court reporter were present at the November 19, 2002 hearing at the Butner facility. The proceedings also were broadcast live in Court-

room # 5 at the United States Courthouse in the District of Columbia. Dr. Johnson testified at the November 19, 2002 hearing and BOP records and status reports relating to Mr. Weston and his treatment were introduced into evidence.

At a status hearing on November 26, 2002, the Court set a schedule for the parties to submit proposed findings of fact and conclusions of law with respect to the government's request for a one-year extension of the commitment period under 18 U.S.C. § 4241(d). Counsel for the defendant consented to continued medication of the defendant pending resolution of the pending motion. Counsel for the defendant also requested and received a modification of the schedule and additional time within which to file the required pleadings for compelling personal reasons.

**FINDINGS OF FACT**

Pursuant to this Court's March 6, 2001 order, the BOP has submitted reports regarding Mr. Weston's treatment every thirty days. A review of these progress reports reveals Mr. Weston's steady improvement as a result of treatment with antipsychotic medication.

In the BOP's first status report, dated March 1, 2002, the BOP stated that Risperadol, an antipsychotic medication, was initially administered to Mr. Weston on January 30, 2002. Following the onset of treatment, according to the report, Mr. Weston "gradually demonstrated an increased amount of interaction with staff." On February 28, 2002, for example, "he indicated his willingness to utilize the telephone to speak with his family; something that he had been unwilling to do secondary to extreme paranoia during his entire period in custody with" the BOP. The report observed that Mr. Weston "can talk fairly rationally about the day to day issues regarding his care; however, extended conversations continue to reveal gran-

diose and paranoid delusional ideation." Accordingly, the report stated the defendant was tolerating his medication "well, without observable side effects" and had shown "some positive response." The report concluded that Mr. Weston remains incompetent to stand trial, adding that "[w]e remain optimistic, however, that with continued treatment there is a substantial likelihood that his competency can be restored."

In its April 4, 2002 report, the BOP explained that the defendant "continues to show positive response to treatment at this time." In this regard, the report focused on the fact that defendant had made use of both his television and his radio and had "requested a copy of the Bible." The report additionally noted that Mr. Weston had placed a call to, and requested a visit with, his attorneys. Furthermore, the report observed that Mr. Weston "has not experienced any side effects from [his] medication and has demonstrated good compliance." The report ultimately found that, despite the progress, "there is sufficient evidence to determine that delusional thinking is still present in regard to his legal situation." According to the report, in "extended conversations regarding [Mr. Weston's] medical status, he does verbalize some inaccurate and probable delusional ideas about the status of his injuries and the potential for correction of some of his medical problems." The report also stated that Mr. Weston "continues to have some grandiose ideas about his identity and capacities.... On extended discussions, it is evident that he still harbors some delusional ideas with paranoid and grandiose characteristics." The report concluded that, "with continued treatment there remains a substantial likelihood that Mr. Weston's competency to stand trial can be restored."

The May 4, 2002 report stated that Mr. Weston remained in seclusion. Risperadol and Neurotin continued to be administered for some time. According to the report, "[a]s the month of April progressed, it appeared that Mr. Weston had experienced maximum benefits from his trial of Risperadol and the decision was made ... to change his antipsychotic to Seroquel ... with the dose being tapered upward." According to the report:

The decision to change antipsychotic medication followed continued review of Mr. Weston's mental status. He had demonstrated what was viewed as an initial positive response to the Risperadol, and as noted in previous reports, had resumed verbal interactions with staff and appeared more alert. Over time, however, he appeared to adapt to the medication and no additional benefits in regard to decreasing the symptoms of his psychosis were noted. Throughout that same period of time, he seemed to become increasingly preoccupied with his medical status.... In view of the fact that he did not appear to be making additional gains in the resolution of his psychosis, the decision was made to initiate a trial of a different antipsychotic.

The report stated that, as with the prior medication, Mr. Weston did not experience any side effects due to Seroquel and appeared to be tolerating the change relatively well. With respect to Mr. Weston's competency to stand trial, the fourth status report noted that the defendant "still appears to harbor delusional ideas about his situation," but he "appears willing to speak with his attorneys by phone and in person," and he has not "express[ed] specific delusional ideas about them at this time." The report concluded that the BOP doctors "continue to believe that with treatment there is a substantial likelihood that his competency can be restored," but that because of the recent switch to Se-

roquel, the defendant "will need to be monitored on this medication for a period of at least a few months to determine his responsiveness."

In its June, 2002 report, the BOP highlighted Mr. Weston's positive response to treatment with the new antipsychotic medication. It stated that, "[w]ith the change of antipsychotic medication ... Mr. Weston has again shown increased willingness to talk with staff." It further noted that "Mr. Weston tolerated the change in medication without any problem" and "is not demonstrating any side effects from the medication treatment at this time." According to the report, while Mr. Weston continued to "express some grandiose ideas about his abilities and the abilities of his attorneys, and his family members," in contrast to the previous month, he did not demonstrate "overt anxiety." The status report did note that Mr. Weston's "delusional ideas impair his understanding of the legal process and his options within that process," but added that "with treatment there is a significant likelihood that [his] competence can be restored in the foreseeable future."

The fifth BOP status report, dated July 1, 2002, found that Mr. Weston remained in seclusion, had a decreased willingness to exercise, and "often reclines on his bed under his covers. His hygiene remains poor[.]" The report stated that Mr. Weston "continues to express his belief that he is competent to stand trial[,]" a position inconsistent with that of Dr. Johnson and Mr. Weston's attorneys. The report added that "at times he appears to present information that is inconsistent with the reality of how recent events have happened." The report recognized that Mr. Weston's delusions remained intact but that "[f]or the most part he does not overtly verbalize his delusional ideas." The report stated that "[i]t is our opinion that

Mr. Weston has not yet regained his competency to stand trial." It added that "with continued treatment there is a significant likelihood that his competence can be restored in the foreseeable future."

On August 1, 2002, Dr. Johnson testified before the Court at a hearing on the then pending motion to extend medical treatment. As of that date, Mr. Weston showed more expression, smiled more often in appropriate circumstances, engaged with the Butner staff more frequently, and was better able to carry on a coherent conversation. Transcript of August 1, 2002 hearing ("8/1/02 Tr."), at 22. Dr. Johnson chronicled the improvements resulting from Mr. Weston's continued treatment:

> Improvement in his affect or mood; a broader range of affect; increased ability to relate to people and to interact verbally and socially; an increased interest in his own well-being and in looking out for his interests; an increased willingness to maintain contact with individuals by use of the telephone; an increase in having more stimulation from civilization, as evidenced in an interest in having access to a radio or television. He's also now able to accurately comment on things that are going on in his environment, and he has recognized the degree of illness in some patients in the hallway with him when he never seemed to have any interest or obligation or ability to talk before.

*Id.* 35.

Bureau of Prison reports for the months leading up to the November 19, 2002 status hearing detailed Mr. Weston's progress with the antipsychotic medication. Reports submitted in September, October and November, 2002 noted improvements in defendant's condition. In the September report, Dr. Johnson concluded that defendant "continues to show a positive

response to his antipsychotic medication treatment." In the October report, the BOP stated that the defendant had become increasingly autonomous in his functioning. The report concluded by stating that the defendant was "tolerating medication treatment well" and continuing to "show some improvement as treatment with antipsychotic medications continues." Dr. Johnson stated that there was a "substantial likelihood" that Mr. Weston would "regain competency in the foreseeable future." In its November submission, the BOP reported that Mr. Weston's mood was "okay" and that his affect showed a range consistent with the content of conversations. Mr. Weston did not appear to be overly anxious or worried and denied anxiety, depression or suicidal and homicidal ideation. He followed current affairs and did not appear to be suffering from hallucinations. The November report stated that Mr. Weston "has shown considerable improvement in his mental status due to treatment with Seroquel and it appears the increase in dosage may have been useful in . . . decreasing the symptoms of his illness." With respect to a possible trial, Mr. Weston's evaluators noted that, while defendant had not regained his competence, there was a "substantial likelihood" that he would regain it in the " 'foreseeable future.' " Despite the improvements, the report noted that Mr. Weston continued to suffer from delusions.

Dr. Johnson testified at the November 19, 2002 hearing. During the course of the proceedings, she stated her opinion that there is a "substantial possibility in the foreseeable future that Mr. Weston will attain the capacity to permit the trial to proceed." (11/19/02 Tr. 11–12.) Dr. Johnson defined "foreseeable future" as being twelve months, stating "that is my definition or understanding of what I would view as a time period to be considered the foreseeable future in treatment with Mr.

Weston with the medication regimens that we would like to utilize with him." (11/19/02 Tr. 12.) She noted that the twelve month period was predicated on the BOP's plan to finish Mr. Weston's current medication at its maximum dose and then to utilize at least two other medications in similar four- to six-month trials. *Id.* 18–19, 26, 29–30, 74. As Dr. Johnson explained, "we can only deliver that treatment as we are delivering it by gradually increasing the dose of a particular medication and monitoring his response, and then making a determination whether we need to change the treatment regimen for additional responsiveness, or because he didn't respond" *Id.* 36.

While Mr. Weston continued to suffer delusions, Dr. Johnson noted that he had improved enough via treatment with antipsychotic medication that the BOP staff were prepared to transfer him out of his seclusion unit into the "open population" (11/26/02 Tr. 3.) He had not yet been transferred, however, because he had not agreed to this plan. *Id.* 4.

Dr. Johnson also chronicled improvement *vis a vis* Mr. Weston's delusions. As she noted, though the defendant's "thought disorder" did continue to "impact on how well" he "work[ed]" with his attorneys," she considered it significant that when the defendant was "confronted" about his delusions, he would "stop and think about what it is he's saying and why it is someone else might not have the same point of view" (11/19/02 Tr. 37–38.) This, Dr. Johnson noted, was "a change in his way of looking at his thought process" *Id.*

Dr. Johnson concluded by reiterating her optimism that the defendant's competency would be restored in the reasonably foreseeable future, because "he continues to show changes in his symptom picture in the direction of improvement" *Id.* 69. She

cautioned, however, that "[t]he treatment process . . . isn't magic, it's not overnight. We've been exceptionally careful in adjusting his doses to minimize side effects. He's been very compliant, but we don't want to jeopardize that by going too fast and having him develop side effects." *Id.* 104. As she summed up her opinion and the opinions of the BOP medical staff, "I've been impressed with [Mr. Weston's] gradual progression [and] if you were to poll the staff about the change in Mr. Weston, most of them see it to be remarkable." *Id.* 105.

The Court also factors into the decision-making process its own observations of the defendant at the November 19, 2002 Butner hearing. For the past four and one half years, this Court has interacted with the defendant at various Court hearings in the District of Columbia and the Butner facility. At the November 19, 2002 hearing, the Court observed the defendant to be more focused and attentive during that hearing than at any prior hearing. The defendant responded appropriately in response to a greeting from the Court and responded affirmatively by nodding "yes" when the Court noted that he had gained weight since the last hearing. When questions were answered "yes" by Dr. Johnson regarding the defendant, he also responded affirmatively by nodding "yes." The defendant also appeared to communicate freely with his attorneys although the Court will hasten to add that it had no insight as to the subject of those attorney-client communications.

The Court rejects the defendant's suggestion that Dr. Johnson is "simply guessing as to the outcome of Mr. Weston's individual case." Def.'s Proposed Findings of Fact and Conclusions of Law, at 18. Dr. Johnson's current opinion that there is a substantial probability that the defendant will be restored to competency in the foreseeable future is based on her extensive experience (including the fact that she has been qualified as an expert in the fields of competency restoration and forensic psychiatry "over a hundred times."(8/1/02 Tr. 22)). Further, she opined that Mr. Weston's improvement via treatment with antipsychotic medication is "tracking" the restoration path that she has witnessed in other patients. 8/1/02 Tr. 67–68.

This Court also rejects the defendant's argument that Mr. Weston's "delusions are unabated and apparently have expanded in some ways." Def.'s Proposed Findings of Fact and Conclusions of Law, at 14. At the November, 2002 hearing, Dr. Johnson articulated her understanding of what an expansion of delusions on the part of Mr. Weston would entail. She stated that an expansion of delusions would involve the defendant "bring[ing] new issues, or players in with alternative explanations or expanded explanations" (11/19/02 Tr. 84). In Dr. Johnson's opinion, simply relabeling something that he already has expressed . . . isn't necessarily an expansion." It is her view that relabeling his delusions, "returning to the same kind of ideas," is all that the defendant has done. *Id.* 65. The Court credits Dr. Johnson's opinion.

## CONCLUSIONS OF LAW

In *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), the United States Supreme Court held that "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to be tried cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Jackson*, 406 U.S. at 739, 92 S.Ct. 1845. In *United States v. Deters*, the court stated that

[i]f [the defendant cannot understand the proceedings because of a mental disease or defect], the defendant is incompetent to stand trial, and the court must order the defendant hospitalized for a reasonable period of time (up to four months) for the purpose of determining whether there is a "substantial probability" that the defendant will become competent in the foreseeable future. If the court finds that this substantial probability exists, the defendant's step-two confinement may be extended for an "additional reasonable period of time" to allow him to gain the capacity for trial.

*United States v. Deters,* 143 F.3d 577, 580 (10th Cir.1998).

The governing statute, 18 U.S.C. § 4241(d), is clearly consistent with the *Jackson* proposition and provides, in relevant part:

if a court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and

(2) for an additional reasonable period of time until -

(A) his mental condition is so improved that trial may proceed, if the court finds that there is substantial probability that within such additional

period of time he will attain the capacity to permit the trial to proceed; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of the "civil commitment statute," or section 4246.

18 U.S.C. § 4241(d).

■ To justify extended commitment pursuant to 18 U.S.C. § 4241(d)(2), the government must prove, by clear and convincing evidence, that a substantial probability exists that the continued administration of antipsychotic medication will result in a defendant attaining the capacity to permit the trial to proceed in the foreseeable future. *Cf. Riggins v. Nevada,* 504 U.S. 127, 135, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (contemplating application of a clear and convincing evidence before antipsychotic medication may be forcibly administered) (citing *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (Due Process Clause allows civil commitment of individuals shown by clear and convincing evidence to be mentally ill and dangerous)); *Riggins,* 504 U.S. at 139, 112 S.Ct. 1810 (Kennedy, J., concurring) (government must make an "extraordinary showing" before antipsychotic medication may be forcibly administered); *United States v. Weston,* 255 F.3d 873, 880 n. 5 (D.C.Cir.2001) ("The district court held the government to a clear-and-convincing-evidence burden of proof [*citing* 134 F.Supp.2d 115, 121 & n. 12 (D.D.C.2001) ]. Neither party challenges this determination"), *cert. denied,* 534 U.S. 1067, 122 S.Ct. 670, 151 L.Ed.2d 583 (December 10, 2001). Once the government has met the "substantial probability" standard, it may

extend commitment for a reasonable time period.

■ The Court credits the uncontroverted testimony of Dr. Johnson that there is a substantial probability that Mr. Weston will regain competency in the foreseeable future. It is therefore tasked with determining whether the requested period of one additional year is consistent with the provisions of 18 U.S.C. § 4241(d)(2)(A). In light of the fact that the BOP has thus far proceeded with caution in increasing Mr. Weston's dosage, the representations of BOP doctors that they intend to treat Mr. Weston with at least two additional antipsychotic medications requiring trial periods of four to six months each and, finally, the nature of the offenses charged, the Court, in the exercise of its discretion, is persuaded that the requested year-long commitment period is reasonable. The Court's conclusion is supported by the existing case law. *See, e.g., Jackson,* 406 U.S. at 738, 92 S.Ct. 1845 (stating that due process concerns require that "the nature and duration of commitment bear some reasonable relation to the purpose); *Little v. Twomey,* 477 F.2d 767, 770 (7th Cir. 1973) (holding that "a 'reasonable period of time' must be to some extent equated with the gravity of the offense involved"), *cert. denied,* 414 U.S. 846, 94 S.Ct. 112, 38 L.Ed.2d 94 (1973). Indeed, in the words of Dr. Johnson, "[t]he treatment process... isn't magic, it's not overnight. We've been exceptionally careful in adjusting his doses to minimize side effects." *Id.* 104. In the Courts' view, the request to extend treatment for an additional year is hardly unreasonable. In proceeding cautiously and prudently, serious side effects have been minimized by the mental health physicians. Thus, progress has been made

to restore Mr. Weston's competency in his first period of intense treatment for his illness.

**Conclusion**

Upon consideration of the uncontroverted testimony of the government's expert witness, Dr. Sally Johnson, which the Court credits, the uncontroverted monthly progress reports from the Butner Facility, which the Court also credits, as well as the Court's own observations and interactions with the defendant at the Butner Facility in November, 2002, this Court is persuaded by at least clear and convincing evidence that the defendant's mental health condition is improving, although he currently lacks the requisite capacity to proceed to trial. The Court further credits Dr. Johnson's opinion that there is a substantial probability that the defendant will attain the capacity to permit the trial to proceed within the foreseeable future, which, in her opinion, could be a year from the time that the pending motion was filed. Accordingly, the government's request to continue medication for an additional one year period is **GRANTED.** The Court is further persuaded by the authorities submitted by the government that the Court's decision is reasonable considering all of the circumstances of this case.[1]

An appropriate Order accompanies this Memorandum Opinion.

**ORDER**

Upon consideration of the government's Motion Pursuant to 18 U.S.C. § 4241(d)(2), the response and reply thereto, the evidentiary record herein, as well as oral arguments and the relevant statutory and case law governing the issues, it is by the Court hereby

---

1. In reaching its conclusion, the Court has not considered any progress reports filed subsequent to the November, 2002 hearing.

ORDERED that the government's motion is **GRANTED** and that Mr. Weston's hospitalization and treatment are continued for an additional period of one year from **November 19, 2002,** the date of the filing of the pending motion, until **November 19, 2003;** and it is

**FURTHER ORDERED** that the monthly progress reports shall continue through that period; and it is

**FURTHER ORDERED** that this **ORDER** is without prejudice to a supplemental evidentiary hearing scheduled for **June 17, 2003 at 10:00 a.m.,** in Courtroom # 1 of the United States District Court for the District of Columbia to consider further evidence of defendant's medication since **November 19, 2002,** his response to further medication and any current opinions on the issue of his attainment of competency or not and prognosis for attainment of competency to participate in further proceedings. By no later than **May 20, 2003** the government shall file an appropriate pleading informing the Court of evidence it plans to adduce at the hearing on **June 17** to support its request that medication of Mr. Weston should continue until **November 19, 2003.** Defense counsel shall file an appropriate response to the government's submission by no later than **June 3, 2003;** any reply by the government shaLl be filed by no later than **June 10, 2003;** and it is further

ORDERED that the Bureau of Prisons and the United States Marshal's Office shall transport the defendant from the Butner Medical Facility to attend the hearing in the District of Columbia and house the Defendant in an appropriate facility to insure no interruption in his medication regimen.