**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CRUZ JOAQUIN VISINAIZ,

    Defendant-Appellant.

No. 03-4282
(D. Utah)
(D.Ct. No. 03-CR-701-DAK)

### ORDER AND JUDGMENT[*]

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**O'BRIEN**, Circuit Judge.

    Cruz Joaquin Visinaiz was indicted on one count of second degree murder.
This appeal stems from a district court order granting the government's motion
for a psychiatric evaluation of the defendant in response to Mr. Visinaiz's notice
of his intent to introduce expert witness testimony as to his mental condition at
the time of the offense. Mr. Visinaiz contends the district court erred when it

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

ordered him committed to a mental institution for a period of up to seventy-five days for psychiatric evaluation.

The government charged Mr. Visinaiz with second degree murder within Indian Country in violation of 18 U.S.C. §§ 1111(a) and 1153(a). The district court then detained Mr. Visinaiz pending trial, finding him a serious flight risk and a serious danger to the community. Subsequently, Mr. Visinaiz filed a Notice and an Amended Notice of Expert Witness Testimony of Mental Condition pursuant to Federal Rule of Criminal Procedure 12.2(b), stating he may introduce evidence through an expert witness at trial as to his mental condition at the time of the alleged murder. Specifically, the Amended Notice states "the expert may testify about Mr. Visinaiz's state of mind at the time of the decedent's death, given his medical diagnoses for agoraphobia, panic disorder and alcohol abuse." Mr. Visinaiz explained this testimony would support his theory of self-defense by establishing the reasonableness of his subjective beliefs at the time of the alleged murder. In conjunction, Mr. Visinaiz also provided the government the report of an expert witness intended for use at trial.

In response, the government moved for a psychiatric examination of Mr. Visinaiz, pursuant to Fed. R. Crim. Proc. 12.2(c)(1)(B) and 18 U.S.C. §§ 4241(a),

4242(a), and 4247(b). In the alternative, the government moved to exclude the expert witness' report and testimony, asserting they were irrelevant and immaterial to Mr. Visinaiz's self-defense theory.

Without conducting a hearing or waiting for a response from Mr. Visinaiz, the district court ordered Mr. Visinaiz committed to an appropriate facility for a psychiatric, insanity, and diminished capacity examination not to exceed ninety days, with the possibility for a fifteen-day extension, on the examiners' appropriate request.[1]

Mr. Visinaiz filed a motion to vacate this commitment order and attached a letter written by his expert witness psychologist indicating his competency to stand trial. During the hearing on his motion to vacate, Mr. Visinaiz's attorney argued commitment was unnecessary and clarified Mr. Visinaiz's intent to rely only on a self-defense theory and not raise an insanity or diminished capacity defense at trial. Although the district court heard oral argument, it took no evidence and made no findings of fact regarding Mr. Visinaiz's past or present

---

[1] The order and amended order were filed pursuant to 18 U.S.C. §§ 4241(a) allowing examination to determine competency to stand trial, 4242(a) allowing examination to determine sanity at the time of the offense, and 4247(b) explaining the procedures to be used in conducting these examinations.

mental state. After the hearing, the district court reaffirmed its decision, but amended the order to limit the time of evaluation to seventy-five days. This appeal followed and the district court stayed its order for in-custody psychiatric evaluation pending resolution of this interlocutory appeal.

Mr. Visinaiz raises one issue on appeal: whether the district court erred when it committed him for psychiatric evaluation based on his Rule 12.2(b) notice to present evidence regarding his mental state at the time of the offense, especially in light of its failure to take evidence or make findings of fact for the basis of its decision.

**JURISDICTION**

Before reaching the merits of this case, we must first determine whether we have jurisdiction to hear this appeal. Specifically, we must determine whether the district court's commitment order is immediately appealable. Generally, under the final judgment rule, this court only exercises jurisdiction over appeals from "final decisions" from the district courts. 28 U.S.C. § 1291. In the criminal context, this means a defendant is required to await conviction and sentencing before bringing an appeal. *Flanagan v. United States*, 465 U.S. 259, 263 (1984). However, the collateral order doctrine of *Cohen v. Beneficial Indus. Loan Corp.*,

-4-

337 U.S. 541, 545-47 (1949), provides limited exceptions to the final judgment rule for interlocutory appeals. Under the collateral order doctrine, a litigant may seek immediate review of an order if it "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (quotation marks and citation omitted).

It is clear the first factor of the collateral order doctrine is present in this case because the district court's order conclusively determined Mr. Visinaiz should be committed for psychiatric examination. *See United States v. Deters*, 143 F.3d 577, 581 (10th Cir. 1998) (concluding a district court's order confining a defendant for a competency evaluation satisfied the first factor of the collateral order doctrine.)

Next, the order also resolved an important issue completely separate from the merits of the action. Specifically, Mr. Visinaiz will suffer a loss of liberty by his involuntary commitment, and, this issue is completely independent of Mr. Visinaiz's guilt or innocence of his second degree murder charge. Although the government argues Mr. Visinaiz suffers no loss of liberty by being committed to

the mental hospital because he is already being detained pending trial, a significant difference exists between the two types of detainment.

This proposition is illustrated by the Supreme Court's ruling in *Vitek v. Jones*, where it recognized "[t]he loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement." 445 U.S. 480, 492 (1980).[2] In *Vitek*, the Court struck down as unconstitutional a Nebraska statute authorizing transfer of an inmate to another facility without a hearing for examination, study, or treatment if the Director of Correctional Services found the inmate suffered from a mental disease or defect. *Id.* at 483-84. In concluding the transfer constituted "the kind of deprivations of liberty that required procedural protections," *id.* at 494, the Court explained "[i]t is indisputable that commitment to a mental hospital can engender adverse social consequences to the individual and that whether we label this phenomena stigma or choose to call it something else ... we recognized that it can occur and that it can have a very significant impact on the individual," *id.* at 492 (quoting *Addington v. Texas*, 441 U.S. 418, 425-26 (1979)) (quotation marks and alteration omitted). Therefore, Mr.

_____

[2] As a result of the district court's detention order, a review of Mr. Visinaiz's previously filed motion to revoke detention before another judge was deferred until Mr. Visinaiz's "competency issues [were] resolved."

-6-

Visinaiz's transfer to a mental hospital is an important issue separate from his pretrial detainment and the merits of his case, and we conclude the second collateral order doctrine factor is satisfied.

Finally, we conclude the last factor is also satisfied because the order would be unreviewable on appeal. Specifically, post-confinement review could not provide adequate relief for Mr. Visinaiz's immediate loss of liberty during his commitment. *Deters*, 143 F.3d at 581 (citing *United States v. Weissberger*, 951 F.2d 392, 396-97 (D.C. Cir. 1991). We determine we have jurisdiction over this interlocutory appeal and now address the merits of Mr. Visinaiz's claims.

**ANALYSIS**

Mr. Visinaiz argues the district court erred when it ordered him committed for a competency examination in response to his notice of intent to present expert witness testimony of his mental state at the time of the offense, pursuant to Rule 12.2(b). Specifically, Mr. Visinaiz asserts the ordered involuntary commitment for up to seventy-five days without reasonable cause violates his rights to substantive and procedural due process. While we agree with Mr. Visinaiz's general argument and conclude the district court erred in committing him for psychiatric evaluation, we avoid deciding the constitutional issues raised in this

appeal because the merits of this case can be resolved on narrower grounds. *See ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1186 n.8 (10th Cir. 1998) (holding "federal courts should avoid reaching the merits of a constitutional issue when the case may be decided on [other] grounds"), *cert. denied*, 525 U.S. 1122 (1999). In reviewing the appropriateness of a Rule 12.2 order for psychiatric confinement, we accept the district court's findings of fact unless they are clearly erroneous, and give appropriate deference to the district court's conclusions. *See Deters*, 143 F.3d at 584; *In re Newchurch*, 807 F.2d 404, 412 (5th Cir. 1986).

Under Rule 12.2, a defendant must provide the government with notice of intent before trial to (a) assert a defense of insanity at the time of the offense, or (b) introduce expert evidence relating to a mental disease, defect or condition bearing on the issue of guilt. Fed. R. Crim. Proc. 12.2(a) and (b). According to the Advisory Committee Notes, the purpose of this rule is to provide the government with adequate time to prepare to meet the issue with expert testimony. *See* Committee Notes, 1983 Amendments, West Federal Criminal Code and Rules (2004 ed.) at 86. After notice under Rule 12.2(a), the district court must, on the government's motion, order the defendant examined under 18 U.S.C. § 4242. Fed. R. Crim. Proc. 12.2(c)(1)(B). Alternatively, after notice under Rule 12.2(b), the district court may, on the government's motion, order

examination of the defendant under procedures ordered by the court.  *Id.*

As previously noted, Mr. Visinaiz filed notice pursuant to Rule 12.2(b) of possible expert testimony of his mental condition at the time of the murder. Although it is unclear whether the district court ordered the examination on grounds of incompetency,[3] it is clear the district court ordered Mr. Visinaiz's examination under Rule 12.2(a) to determine his sanity at the time of the offense. In its order, the district court specifically ordered Mr. Visinaiz's examiners to provide opinions on Mr. Visinaiz's current "mental status, including insanity and diminished capacity" as well as his mental status at the time of the offense.  Also, at the hearing on Mr. Visinaiz's motion to vacate the district court's psychiatric examination order, the district court expressed its view Mr. Visinaiz's self-defense argument could be construed as an insanity defense.  We disagree with the district court's assessment of Mr. Visinaiz's defense.

---

[3] At the hearing, the district court expressly acknowledged Mr. Visinaiz did not raise the issue of his competency to stand trial, and it did not "suspect" Mr. Visinaiz was incompetent.  Nevertheless, the district court issued the commitment orders, in part, pursuant to 18 U.S.C. § 4241(a), regarding competency examinations, and noted at the hearing it was "unsure" of Mr. Visinaiz's competency.  In the event the district court issued the commitment order based, in part, on a question of competency, our holding is the same as that provided with respect to its decision for an insanity commitment and examination.

First, if the district court ordered the commitment to evaluate competency, no evidence in the record suggests Mr. Visinaiz was incompetent to stand trial and the district court made no findings to this effect. Similarly, as to commitment to determine sanity, no evidence in the record indicates Mr. Visinaiz intended to rely on an insanity defense, nor did the district court make any findings of fact on his sanity for the purpose of ordering commitment.[4] Instead, it is clear Mr. Visinaiz never gave notice of an intent to rely on a defense of insanity as mandated by Rule 12.2(a), and, in fact, during the hearing on the district court's commitment order, he repeatedly and specifically denounced any intent to use this defense, or even a defense of diminished capacity. Regardless of the district court's views on the substance of Mr. Visinaiz's proposed defense, it must honor the choice of a competent defendant not to raise the insanity defense. *See United States v. Marble*, 940 F.2d 1543, 1548 (D.C. Cir. 1991). Given the lack of evidentiary support or findings for commitment for either an insanity or incompetency examination, we conclude the district court erred in committing Mr. Visinaiz for an in-custody examination under Rule 12.2(a).

---

[4] Moreover, while Mr. Visinaiz's counsel indicated at the hearing that the court could interview his client and the two "investigators," also attending the hearing and available to testify, to make an initial determination on his sanity for the purpose of deciding the commitment issue, the district court took no evidence.

-10-

We next turn to the issue of a mental examination of Mr. Visinaiz pursuant to his notice under Rule 12.2(b).  Under Rule 12.2(c)(1)(B), the district court "may, upon the government's motion, order the defendant to be examined under procedures ordered by the court" when a defendant provides notice of his intent to introduce expert evidence relating to a mental condition bearing on the issue of guilt, as provided under Rule 12.2(b).  *See also* Committee Notes, 2002 Amendments at 88.  Although district courts have been given discretion in defining the procedures to be used in examining a defendant who provides Rule 12.2(b) notice,[5] such discretion is provided to accommodate for the many kinds of expert testimony which could be presented regarding a defendant's mental condition.  Unlike evidence of a defendant's competency or sanity, expert evidence relating to a mental disease, defect, or other condition, is extremely varied, requiring a case-by-case analysis to determine how extensive an examination is warranted in order for the government to fairly prepare for this evidence at trial.  *See United States v. Davis*, 93 F.3d 1286, 1293 (6th Cir. 1996).  In instances where a district court finds the claimed mental condition to be complex, a greater examination might be warranted, whereas for minor

---

[5] *See* Committee Notes, 2002 Amendments at 88 (noting no statute applies to 12.2(b) examinations, but explaining that for Rule 12.2(b) examinations "the court is given the discretion to specify the procedures to be used.  In so doing, the court may certainly be informed by other provisions, which address hearings on a defendant's mental condition.  *See, e.g.*, 18 U.S.C. § 4241, et seq.").

conditions, a more limited examination would suffice. Accordingly, the extensiveness of the examination may determine the length of such an examination.

In so concluding, we are mindful both Mr. Visinaiz and the government have a strong interest in ensuring Mr. Visinaiz is provided with a speedy trial. *See Deters*, 143, F.3d at 584 (citing U.S. Const. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972)). No defendant should be arbitrarily detained if not warranted by the facts of the case. *Cf. Deters*, 143 F.3d at 584 (concluding a district court should make findings of fact concerning the need for commitment under Rule 12.2(a) in conducting a psychiatric evaluation to determine competency and sanity at the time of the offense); *Newchurch*, 807 F.2d at 410 (concluding district court must rely on evidence that commitment is necessary to detain a defendant to determine sanity and mental condition at the time of the offense.) Therefore, we conclude a district court should make findings of fact concerning the need for commitment. Those findings of fact as to the appropriateness of confinement will be accepted by appellate courts unless clearly erroneous. *Deters*, 143 F.3d at 584.

In so doing, we recognize some circuits have concluded Rule 12.2, by

itself, and despite recent amendments, does not authorize commitment or "in-custody" examinations. *See United States v. Rinaldi*, 351 F.3d 285, 289 (7th Cir. 2003); *Davis*, 93 F.3d at 1295 (6th Cir.). We also recognize the statutory scheme allowing courts to temporarily confine defendants during psychiatric evaluations under 18 U.S.C. § 4241 and § 4242 are expressly limited to competency and insanity determinations, *see Deters*, 143 F.3d at 578 (relying on 18 U.S.C. § 4247(b)). Similarly, the 2002 amendments to Rule 12.2 indicate no statutory counterpart exists for Rule 12.2(b) examinations, but that, in exercising its discretion, the court may be "informed" by other provisions that address hearings, including for example, "18 U.S.C. § 4241, et seq." Committee Notes, 2002 Amendments at 88. We also recognize the court's inherent authority to order mental examinations, *see United States v. McSherry*, 226 F.3d 153, 156-57 (2d Cir. 2000), but also recognize some courts have held such authority only applies to noncustodial examinations. *See Rinaldi* 351 F.3d at 289 (holding made after 2002 amendments); *Davis*, 93 F.3d at 1295-96 (holding made prior to 2002 amendments). Consequently, while it is clear the district court has authority to order a noncustodial examination under Rule 12.2(c) for mental conditions raised under Rule 12.2(b), it is not as clear with regard to custodial examinations.

We need not decide the issue of whether the district court has authority to

order custodial examination under Rule 12.2(b) because nothing in the record here supports the district court's order for commitment for the purposes of a mental examination. Therefore, the district court, under the circumstances presented, erred in ordering commitment of Mr. Visinaiz for a mental examination.

**CONCLUSION**

For the foregoing reasons, we conclude the district court erred in ordering Mr. Visinaiz committed for psychiatric evaluation pursuant to either Rule 12.2(a) or Rule 12.2(b). We leave to the district court's discretion the procedures applied for any noncustodial mental examination of Mr. Visinaiz under Rule 12.2(b).

The order of the district court is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

> **Entered by the Court:**
>
> **WADE BRORBY**
> United States Circuit Judge