# In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 03-2241

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SERGIUS A. RINALDI,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Central District of Illinois.
No. 01 CR 30110—**Richard Mills**, *Judge.*

———————————

ARGUED SEPTEMBER 24, 2003—DECIDED DECEMBER 1, 2003

———————————

Before BAUER, EASTERBROOK, and DIANE P. WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* Sergius Rinaldi pleaded guilty to committing mail fraud and obstructing a health care fraud investigation. Before sentencing, he moved to withdraw his plea based on his claim that he suffers from Adult Attention Deficit Disorder and that the disorder prevented him from forming the requisite criminal intent at the time he committed the offenses. The district court denied the motion and Rinaldi moved to reconsider. Rather than rule on the motion to reconsider, the court ordered that the defendant be committed for a custodial examination not to exceed 45 days to determine whether he was in fact suffering from a claimed mental disease or defect during the commission of

his crimes. The defendant appeals this order. We remand directing the rewriting of the order consistent with this opinion.

## BACKGROUND

Rinaldi is an orthodontist with offices in Springfield and Edwardsville, Illinois. His clients included wards of the state of Illinois who were under the protection of the Illinois Department of Children and Family Services (DCFS), and individuals who were receiving Medicaid assistance from the Illinois Department of Public Aid (IDPA). From 1994 to 2001, Rinaldi submitted claims to DCFS and the IDPA for services rendered to these government insured patients. He submitted claims to DCFS and IDPA for services he did not perform. At least twice he billed the IDPA and/or DCFS for putting braces on children, which he did not do, as well as for "adjustments" to braces at times when he did not even see the patients.

In January 2001, Rinaldi was issued a grand jury subpoena demanding the production of records related to his orthodontics practice. Specifically, the subpoena requested the production of the original case files and claim forms for selected patients, the explanation of benefit forms for those same patients, appointment books for the years 1995-2000, patient sign-in sheets, appointment logs, and records of cancellations.

The defendant refused to produce the records and the district court conducted a hearing to determine if Rinaldi's refusal to reply was contemptuous. The government presented evidence to establish that the defendant removed records from his Springfield office after being served with the subpoena and was later seen hiding them near a dumpster outside of a McDonald's restaurant.

During the contempt hearing Rinaldi testified on his own behalf. At the conclusion of the hearing, the district court remarked that it gave "absolutely no credence" to the defendant's testimony and found that "Dr. Rinaldi ha[d] lied" and "had not been truthful with the Court." *In Re Grand Jury Proceedings*, 280 F.3d 1103,1106-07 (7th Cir.), *cert. denied*, 536 U.S. 925 (2002). The court found the defendant in wilful contempt and ordered him to be held in prison and fined until he complied. The defendant remained confined until November 2001. On November 8, 2001, Rinaldi was indicted.

The indictment charged that the defendant developed a broad scheme to defraud DCFS and the Medicaid system in the state of Illinois. Over a seven-year period, the defendant submitted false documents to the IDPA and, during an audit of his practice, obstructed the criminal investigation by removing and hiding records. The defendant entered into a plea agreement with the government, agreeing to plead guilty to charges of mail fraud and obstruction of a health care fraud investigation.

In January 2003, after the sentencing had been delayed several times, the defendant filed a motion to withdraw his guilty plea. In the motion, Rinaldi suggested that despite having explored all of his defenses with his two attorneys before his plea agreement, he nonetheless had discovered new and viable defenses. One of his newfound defenses was the fact that he had learned, subsequent to the plea agreement, that any mistakes made by him with respect to record keeping or the concealing of documents were the result of a DSM IV diagnosis of Adult Attention Deficit Disorder and not criminal intent. The court denied the motion finding nothing deficient about the plea agreement and that this new theory of defense was contrary to the defendant's prior testimony under oath.

The defense then filed a motion to reconsider the denial of the motion to withdraw the guilty plea. The district court

did not rule on this motion. Instead, the court ordered Rinaldi to submit to an independent mental examination. The court ordered that the evaluation be performed in a suitable facility as arranged by the United States Attorney General, and ordered the defendant to submit himself to custody for the examination. The defendant then filed another motion requesting that the court modify its order. The district court denied the motion to modify and reaffirmed its ruling on May 1, 2003. The matter was stayed, pending this appeal.

## ANALYSIS

### I.  Jurisdiction

First, we consider whether we have appellate jurisdiction over this interlocutory appeal. Generally, the final judgment rule is strictly applied, particularly in criminal cases. *Flanagan v. United States*, 465 U.S. 259, 264-65 (1984). However, the collateral order doctrine does permit an interlocutory appeal for some non-final orders that are too important to be denied review and which are so disconnected from the merits that appellate consideration is required before final adjudication. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

In *United States v. Barth*, the Second Circuit held that a commitment order for a preliminary psychiatric evaluation was not reviewable on an interlocutory appeal. 28 F.3d 253 (2nd Cir. 1994). We decline to follow that decision, following instead the Supreme Court's holding in *Stack v. Boyle*, where the Court held that there was appellate jurisdiction over an interlocutory appeal challenging pretrial bail as excessive, violating the Eighth Amendment. 342 U.S. 1 (1951). In that case, the Court reasoned that where pretrial bail is challenged, relief "must be speedy to be effective.*" Id.* at 4. We believe that the same reasoning applies here.

When an order calls for a defendant's incarceration, appellate review is proper.

According to the Supreme Court in *Flanagan*, an order must meet three conditions to fit within this narrow exception: (1) the order must conclusively determine the disputed question; (2) it must dispose of an issue totally apart from merits of the action; and (3) it must be virtually unreviewable on appeal from a final judgment. *Flanagan*, 465 U.S. at 265.

The requirements of the collateral order doctrine are easily satisfied in this case of an order of commitment for psychiatric examination. *United States v. Davis*, 93 F.3d 1286, 1289 (6th Cir. 1996). First, the order conclusively determined that Rinaldi should undergo a psychiatric examination to determine his capacity to form criminal intent. Second, determinations about Rinaldi's mental capacity are separate from the issue of his guilt or innocence. Finally, the order would be virtually unreviewable because there would be no effective relief for Rinaldi's loss of liberty during the period of commitment. *Id.*; *see also United States v. Weissberger*, 951 F.2d 392, 396 (D.C. Cir. 1991); *United States v. Gold*, 790 F.2d 235, 239 (2nd Cir. 1986) (discussing the unreviewability of an order of commitment); *United States v. White*, 887 F.2d 705, 707 (6th Cir. 1989) (finding jurisdiction is over an appeal from order of commitment to determine competency). So the collateral order doctrine applies here; we have jurisdiction.

We now turn to the merits of the defendant's appeal and consider whether the district court's order for an in-custody mental examination of the defendant was proper.

## II. Authority Under Federal Rule of Criminal Procedure 12.2

Federal Rule 12.2 was developed to require a defendant who intended to present a defense of mental illness, insan-

ity, incompetence or diminished capacity to provide notice to the government before trial. FED. R. CRIM. P. 12.2 (2002). After notice, the government could request a psychiatric evaluation of the defendant. *Id.* Rule 12.2 was amended to address five issues: (1) to clarify that a court may order a mental examination for a defendant who has indicated an intention to raise a defense of mental condition bearing on the issue of guilt; (2) to require the defendant to give notice of intent to present expert evidence of mental condition in a capital case; (3) to provide authority to the court to order an examination in a capital sentencing; (4) to set the timing of disclosure; and (5) to extend the sanctions provisions to capital cases. *Id.* None of the stated purposes were to create authority for the court to order in-custody examinations of defendants filing notice of intent to present expert evidence on a diminished capacity defense.

In *United States v. Davis*, the Sixth Circuit held that the district court lacked the authority to order the commitment and examination of a defendant under Rule 12.2 where a defendant claimed lack of capacity to form specific intent as opposed to a claim of incompetence or insanity. 93 F3d 1286 (6th Cir. 1996). Although *Davis* was decided before the 2002 amendments to Rule 12.2, the amendments do not alter the holding in *Davis*. The amendment codified the *Davis* holding that an outpatient examination could be ordered when a defendant raises a diminished capacity defense. The fact that the rule did not address the in-custody examination suggests that the new rule left the prohibition on in-custody evaluations intact. *See* Committee Notes, 2002 Amendments, West Federal Criminal Code and Rules (2003 ed.) at 88.

### III. Authority Under 18 U.S.C. §§ 4241 and 4242

The district court erred when it relied on 18 U.S.C. §§ 4241 and 4242 as the basis for ordering an in-custody

examination. These sections only apply in specific circumstances and not in situations where the defendant has given notice that he wishes to present evidence of diminished capacity. Section 4241 applies where there is an issue of the defendant's competency to stand trial and Section 4242 applies when there is an issue of insanity at the time of offense. Rinaldi does not fit the criteria for an in-custody examination.

## IV. Non-custodial Mental Examination Allowed

While Rule 12.2 does not provide authority for the district court to order a custodial examination, nothing in the rule prevents a court from inviting the defendant's *consent* to an examination. This consent might be elicited by telling him that unless he agreed to the mental examination, the court will simply deny the motion to withdraw the plea and will proceed with sentencing. Rinaldi has said that he will agree to a non-custodial examination.

## CONCLUSION

The district court's order for an in-custody mental examination of Rinaldi was improper. However, the court may invite the defendant to consent to an outpatient examination. The defendant seeks to withdraw his guilty plea based on his inability to form criminal intent and so the court is certainly entitled to order its own examination to determine the merits of his motion to withdraw his plea.

This appeal is REVERSED and REMANDED for further proceedings consistent with this opinion.

A true Copy:
      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—12-1-03