In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 05-4718

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

TONY LAPI,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 607—**John W. Darrah**, *Judge.*

_____

ARGUED JUNE 9, 2006—DECIDED JUNE 12, 2006[1]
OPINION PUBLISHED AUGUST 15, 2006

_____

Before RIPPLE, MANION and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge.* In July 2002, Tony Lapi was charged
with one count of bank robbery. *See* 18 U.S.C. § 2113(a). He

_____

[1] In an order issued June 12, 2006, we held that the United States
District Court for the Northern District of Illinois exceeded its
statutory authority in scheduling a dangerousness hearing under
18 U.S.C. § 4246(a). We ordered the district court to take all steps
necessary to effect the immediate release of Mr. Lapi from federal
custody. *See United States v. Lapi,* No. 05-4718 (7th Cir. June 12,
2006).

was found not competent to stand trial by the United States District Court for the Northern District of Illinois and was committed to the custody of the Attorney General; the location of his civil commitment was the Federal Medical Center ("FMC") in Rochester, Minnesota. After approximately eight months at the FMC, the district court determined that Mr. Lapi would not "attain the capacity to permit the trial to proceed," 18 U.S.C. § 4241(d)(2), and he was transferred to the custody of a state mental health facility in Elgin, Illinois. This facility released Mr. Lapi after thirty days.

In May 2005, although no valid Certificate of Mental Disease or Defect and Dangerousness had been filed with the court by the director of the facility at which Mr. Lapi was hospitalized, as required by 18 U.S.C. § 4246(a), the district court ordered that a dangerousness hearing be conducted to assess whether Mr. Lapi posed a "substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a). The district court then determined, without holding this hearing, that Mr. Lapi posed a risk of danger to persons or property and ordered him "committed to the custody of the United States Attorney General." R.81 at 4. Mr. Lapi appealed; we reversed and remanded with the instruction that the district court abide by the procedures set forth in 18 U.S.C. §§ 4246 and 4247, while reserving judgment on whether a § 4246 dangerousness hearing was authorized in this case. *See United States v. Lapi*, No. 05-4328 (7th Cir. Dec. 8, 2005).

On remand, the district court interpreted our order as mandating a dangerousness hearing under § 4246 and ordered that such a hearing be held. Mr. Lapi timely filed his second appeal. For the reasons set forth in the following opinion, we reverse the judgment of the district court.

# I

# BACKGROUND

## A. Section 4241 Proceedings

In July 2002, a grand jury sitting in the Northern District of Illinois returned a one-count indictment charging Tony Lapi with bank robbery. *See* 18 U.S.C. § 2113(a). On August 1, 2002, defense counsel filed a motion requesting an expert evaluation for the purpose of determining whether Mr. Lapi was competent to stand trial. The district court granted this motion and, pursuant to 18 U.S.C. § 4241(a), remanded Mr. Lapi to the custody of the Attorney General of the United States for a competency evaluation. Mr. Lapi subsequently was transferred to the FMC in Rochester, Minnesota.

After a thirty-day commitment, Mr. Lapi's treating psychiatrist at the FMC, Dr. Kelly Ball, expressed the opinion that Mr. Lapi was suffering from "schizoaffective disorder, a severe and chronic psychotic illness that requires psychiatric intervention," and that, as a result, he was "unfit to proceed with the adjudication process." R.18 at 2 (summarizing Dr. Ball's findings). On the basis of Dr. Ball's evaluation, the district court found Mr. Lapi mentally incompetent to stand trial under 18 U.S.C. § 4241(d). He was civilly committed to the FMC for a period not to exceed four months. *See id.*; *see also* 18 U.S.C. § 4241(d)(1) (mandating that, upon finding a defendant incompetent, he should be hospitalized by the Attorney General "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed"). At the end of this four-month period, Dr. Ball recommended a 120-day extension of Mr. Lapi's

commitment, opining that, "with further treatment, there is a substantial probability in the foreseeable future that [Mr. Lapi] could attain the capacity to proceed with this case." R.22 at 2 (summarizing Dr. Ball's recommendation). The Illinois district court granted this request on March 13, 2003. *See id.; see also* 18 U.S.C. § 4241(d)(2) (permitting hospitalization "for an additional reasonable period of time . . . if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed").

At the end of the additional 120-day period, Dr. Ball confirmed her earlier diagnosis that Mr. Lapi suffered from schizoaffective disorder and expressed the opinion that there was not a substantial probability that Mr. Lapi would be restored to competency in the foreseeable future. The district court therefore ordered that Mr. Lapi should remain in the custody of the Attorney General of the United States pending resolution of proceedings under 18 U.S.C. § 4246 in the District Court of Minnesota. *See* R.27 at 2; *see also id.* § 4241(d) (providing that, upon a finding of non-restorability, a defendant becomes "subject to the provisions of section 4246").

## B.  Section 4246 and Related Proceedings

Section 4246 requires that, upon the expiration of a defendant's commitment under 18 U.S.C. § 4241, the director of the facility in which the defendant is hospitalized shall file a Certificate of Mental Disease or Defect and Dangerousness with the district court in "the district in which the person is confined" if the following two requirements are met:

> [(a)] [the defendant] is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and [(b)] . . . suitable arrangements for State custody and care of the person are not available.

*Id.* § 4246(a). Upon the filing of this certificate, the statute provides that the court "shall order a hearing" to assess the defendant's dangerousness. *Id.*

On July 17, 2003, believing Mr. Lapi to be suffering from a mental disease that created a "substantial risk of bodily injury" or property damage and not yet having found "suitable arrangements for State custody," the FMC warden filed a Certificate of Mental Disease or Defect and Dangerousness in the District Court for the District of Minnesota, "the district in which [Mr. Lapi was] confined" at that time. *Id*. This petition, however, was withdrawn by the Government when Mr. Lapi was accepted for placement at the Elgin Mental Health Center in his home state of Illinois. He was transferred to this facility in October 2003. The Elgin Mental Health Center, however, released Mr. Lapi after approximately thirty days, having determined that he no longer required hospitalization. He was transferred to a group living facility and then to a nursing home.

In May 2004, the Government filed a motion in the Northern District of Illinois requesting a second competency evaluation. The district court denied this motion on September 15, 2004, holding that it did not have the statutory authority to reassess Mr. Lapi's competency to stand trial.[2]

---

[2] The Government subsequently filed a motion for reconsidera-
(continued...)

However, the district court ordered Mr. Lapi, who it classified as a "fugitive" because "he was released without any bond ever being set," to appear in court. R.92-16 at 2. Upon appearing, the district court committed Mr. Lapi to the custody of the United States Marshal Service; he was released on a $4,500 recognizance bond.

On February 1, 2005, the Government filed a motion to dismiss Mr. Lapi's indictment. On March 11, 2005, the defense also filed a motion to dismiss. The district court denied the defendant's motion, but has yet to address the motion to dismiss filed by the Government.[3]

On May 9, 2005, in the absence of a motion by the Government or the defendant, the Illinois district court ordered that a § 4246 hearing be held to determine whether Mr. Lapi posed a "substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a). It held that the District Court for the District of Minnesota erred in failing to hold a § 4246 hearing once the FMC Warden filed a Certificate of Dangerousness with that court:

> In the instant case, a Certificate of Mental Disease or Defect and Dangerousness was filed in the United States

---

[2] (...continued)
tion of the court's denial of the motion for a second competency evaluation. The district court denied this motion as well. The Government has not challenged this ruling on appeal.

[3] At oral argument, counsel for the Government indicated that the Government has not pursued its motion to dismiss because the district court indicated a willingness to reconsider its earlier ruling on the Government's motion for a second competency hearing.

> District Court for the District of Minnesota . . . . [A] hearing was required to determine whether Lapi was then suffering from a mental disease or defect . . . . [C]ontrary to the requirements of Section 4246(a), a hearing was not held to determine whether Lapi was then suffering from a mental disease . . . . Instead, he was transferred to a facility in Elgin, Illinois; and Lapi was released to that facility. However, Section 4246 does not provide for the release of the defendant after the certificate has been filed until a hearing is held and it is determined if the defendant's release would create a substantial risk of bodily injury to another or serious damage to the property of another.

R.71 at 5-6.

In October 2005, although the § 4246 hearing had neither been scheduled nor conducted, the Illinois district court entered a finding of dangerousness and ordered that Mr. Lapi be taken into the custody of the Attorney General. Mr. Lapi subsequently was arrested and detained.[4]

Mr. Lapi appealed his detention to this court and filed an Emergency Motion for Release in a Criminal Case. We denied the emergency motion, but "vacate[d] the district court's order, entered October 28, 2005, and remand[ed] for further proceedings consistent with 18 U.S.C. § 4246 and 4247." We "reserve[d] the question of whether a second hearing [was] appropriate." *United States v. Lapi*, No. 05-4328 (7th Cir. Dec. 8, 2005).

On remand, the district court held a status hearing, dated December 15, 2005, at which it indicated its intent

---

[4] Since this date, Mr. Lapi has been incarcerated at the Jerome Combs Detention Center in Kankakee, Illinois.

to schedule a § 4246 hearing. Defense counsel objected; she submitted that a § 4246 hearing was not authorized by statute or by our prior order in this case. *See* Appellant's App. at 41 (noting that this court did not "order[] a second dangerousness hearing" but rather reserved the question of whether such a hearing was appropriate). The district court disagreed:

> [T]he error was committed by the Federal Court in Minnesota in failing to conduct a [§] 4246 hearing and instead simply transferred custody of Mr. Lapi to the mental health facility in Elgin, Illinois. And I still believe a [§] 4246 hearing is appropriate. And the Seventh Circuit concurs. . . . [The Elgin facility was] required to consult the Federal District Court before they released him.

*Id.* at 35. The district court scheduled the § 4246 hearing for March 9, 2006.[5]

Mr. Lapi timely filed a notice of appeal. We issued an order dated June 12, 2006, reversing the judgment of the district court and ordering that court to take all steps necessary to effect the immediate release of Mr. Lapi from federal custody.

## II

### APPELLATE JURISDICTION

The Government contends that we do not have jurisdiction over Mr. Lapi's appeal because the "order scheduling the hearing is interlocutory—there has been no finding

---

[5] The hearing subsequently was rescheduled pending the outcome of the present appeal.

of dangerousness or non-dangerousness, and thus no final judgment." Appellee's Br. at 8; *see also* 28 U.S.C. § 1291. The Government further contends that the collateral order doctrine is inapplicable, given that "there is nothing 'collateral' about the order in this case." Appellee's Br. at 9. Because the defendant's dangerousness and location of commitment is the "*sole* question remaining in the litigation," the Government urges, the district court's order that a § 4246 hearing be held is not separable from the merits of the action. *Id.* (emphasis in original).

As a general matter, the final judgment rule is strictly applied. *See* 28 U.S.C. § 1291. However, "the collateral order doctrine does permit an interlocutory appeal for some non-final orders that are too important to be denied review and which are so disconnected from the merits that appellate consideration is required before final adjudication." *United States v. Rinaldi*, 351 F.3d 285, 288 (7th Cir. 2003). As the Supreme Court has noted,

> [t]o come within this narrow exception, a trial court order must, at a minimum, meet three conditions. First, it must conclusively determine the disputed question; second, it must resolve an important issue completely separate from the merits of the action; third, it must be effectively unreviewable on appeal from a final judgment.

*Flanagan v. United States*, 465 U.S. 259, 265 (1984) (internal quotation marks and citations omitted). The Government does not dispute that the district court's December 2005 order "conclusively determine[d] the disputed question" of whether a § 4246 hearing was authorized; nor does the Government contest that, because of the deprivation of liberty associated with Mr. Lapi's continued detention pending a hearing, the validity of his detention and of the

hearing would be "effectively unreviewable on appeal from a final judgment." *Id.* Instead, the Government submits that whether a hearing is authorized by § 4246 in this case is not a matter "completely separate from the merits of the action." *Id.*

Although Mr. Lapi may never be tried for bank robbery, his federal indictment remains pending in the district court. It therefore certainly is feasible that, if Mr. Lapi were to regain competency, the Government would pursue charges against him. Accordingly, whether the district court is authorized to order a hearing to determine if Mr. Lapi poses a "substantial risk of bodily injury to another person or serious damage to property of another," 18 U.S.C. § 4246(a), is a matter "completely separate from the merits of the action"—whether Mr. Lapi committed the bank robbery for which he is being prosecuted, *Flanagan,* 465 U.S. at 265. *Cf. Rinaldi*, 351 F.3d at 288 (holding that this court had jurisdiction under the collateral order doctrine to review the district court's order committing the defendant for custodial examination under 18 U.S.C. § 4241 because "determinations about [the defendant's] mental capacity are separate from the issue of his guilt or innocence").

Even in the absence of the collateral order doctrine, we would have the authority to issue a writ of mandamus in this case. Mandamus is a drastic remedy traditionally used to confine a lower court to the lawful exercise of its jurisdiction or to compel it to exercise its authority when it has a duty to do so. *See Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34-35 (1980). A writ of mandamus may issue if three requirements are met. The challenged order must: (1) be "effectively unreviewable at the end of the case"; (2) "inflict[] irreparable harm"; and (3) "so far exceed[] the proper bounds of judicial discretion as to be legitimately

considered usurpative in character, or in violation of a clear and indisputable legal right, or, at the very least, patently erroneous." *In re Ford Motor Co., Bridgestone/ Firestone N. Am. Tire*, *LLC*, 344 F.3d 648, 651 (7th Cir. 2003) (internal quotation marks omitted). In this case, all three requirements are met. Due to the deprivation of liberty occasioned by Mr. Lapi's detention pending judicial assessment of his dangerousness, the district court's order inflicts irreparable harm and would be effectively unreviewable at the end of the hearing. Moreover, the district court's order constitutes "patent[] error[]"—an "error [that] is so serious that it amounts to an abuse of the trial judge's authority." *Id.* (internal quotation marks omitted). Not only did the district court misread § 4246 as authorizing a dangerousness hearing in this case, *see infra,* but, compounding its mistake, it ordered Mr. Lapi's incarceration while he awaited such a hearing. Given the effect of the district court's actions on Mr. Lapi's liberty interests, and the lack of any legal justification for its position, we believe that the district court far exceeded "the proper bounds of judicial discretion." *In re Ford*, 344 F.3d at 651 (internal quotation marks omitted). Therefore, even in the absence of jurisdiction under the collateral order doctrine, a writ of mandamus would be appropriate to correct the district court's error.

## III

## ANALYSIS

Mr. Lapi submits that the district court erred in determining that it had the statutory authority to conduct a hearing under § 4246 to assess his dangerousness and the appropriateness of civil commitment. After being found incompetent by federal authorities and transferred to state custody, Mr.

Lapi contends that the State of Illinois assumed all responsibility for his care and custody; the district court, Mr. Lapi continues, therefore no longer has the authority to regulate the terms of his state care, including his release by state authorities, or to detain him upon a finding of dangerousness. The Government responds that, because the district court can reevaluate a defendant's competency to stand trial under 18 U.S.C. § 4241 at any time so long as a federal indictment remains pending, it also necessarily has the authority to conduct a dangerousness hearing under § 4246 when a defendant is released improperly by a state facility after being transferred to state care by the Attorney General. The Government further contends that, because § 4246 requires "suitable" state care, a federal court should be able to conduct a dangerousness hearing in cases, like the present one, where the state care provided does not meet minimum standards. Appellee's Br. at 19-20.

Section 4246 sets forth the limited conditions under which a dangerousness hearing should be held to determine whether the defendant, upon the expiration of the term of hospitalization provided in § 4241, must be civilly committed or, alternatively, may be released. Under § 4246, a dangerousness hearing is appropriate if two requirements are fulfilled. First, the director of the federal facility at which the defendant was hospitalized for a competency evaluation must certify that, due to mental disease, the defendant's "release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a). Second, "suitable arrangements for State custody and care" must be unavailable. *Id.*

The district court interpreted § 4246 to authorize a dangerousness hearing when, after a defendant is transferred to state custody, he later is released, perhaps improp-

erly. "Because we are presented with [an] issue of statutory interpretation, a question of law, we review [the district court's order] de novo." *United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006).

We believe that the district court erred in determining that it was authorized to conduct a dangerousness hearing in this case. First, § 4246 applies only to persons "in the custody of the Bureau of Prisons whose sentence is about to expire" or persons "committed to the custody of the Attorney General" for a competency evaluation pursuant to § 4241. 18 U.S.C. § 4246(a). Neither is true here. Mr. Lapi never was convicted or sentenced, and therefore at no time relevant to this appeal was he "in the custody of the Bureau of Prisons." *Id*. Mr. Lapi also was not in the "custody of the Attorney General" at the time the district court ordered a dangerousness hearing; he already had been transferred by the Attorney General of the United States to state custody for civil commitment. *Id.*

Moreover, § 4246 is triggered only by the filing of a Certificate of Mental Disease or Defect and Dangerousness by the "director of [the] facility in which [the defendant] is hospitalized"; this Certificate, in turn, must confirm that the defendant poses a substantial risk to persons or property and that no suitable state placement is available. *Id.* In this case, the district court issued its December 2005 order that a dangerousness hearing be conducted sua sponte; not only was the hearing not requested by the parties, but the statutory requirement of certification had not been met. At the time of the district court's order, there was not a valid Certificate of Mental Disease or Defect and Dangerousness, authored by the director of the FMC, on record in that court. Certainly, a Certificate had been filed previously, but it was withdrawn by the Government upon Mr. Lapi's placement

at the Elgin Mental Health Center. We see no reason why the withdrawal of this Certificate would be ineffective: Section 4246 authorizes a dangerousness hearing only if no "suitable arrangements for State custody and care" are available; once suitable state facilities are secured, the defendant no longer is subject to § 4246's hearing provisions. *Id.* To the extent that the Government withdraws a Certificate because this statutory mandate is not fulfilled, as it did here, the district court has no statutory authority to conduct a dangerousness hearing.

Even if a valid Certificate had been on record at the time of the district court's order, the District Court for the Northern District of Illinois is not the proper federal district court to assess Mr. Lapi's dangerousness. Section 4246 provides that the Certificate of Mental Disease or Defect and Dangerousness shall be filed in the court in the "district in which the person is confined" while in the "custody of the Attorney General" or "the Bureau of Prisons." *Id*. In the present case, Mr. Lapi was confined in Rochester, Minnesota, while in the custody of the Attorney General; the appropriate court to conduct the dangerousness hearing, therefore, would be the District Court for the District of Minnesota.

These conclusions are consistent with those reached by our sister circuits that have addressed § 4246. For example, in *United States v. Baker*, 807 F.2d 1315 (6th Cir. 1986), the Government had filed a motion with the court questioning the defendant's competency to stand trial. At the conclusion of a hearing on the Government's motion to dismiss charges against the defendant, and prior to a hearing on the defendant's competency, the court "ruled from the bench that [the defendant] was to remain in the custody of the Attorney General pursuant to section 4246 because he was suffering

from a mental disease or defect and that his release would create a substantial risk of bodily injury to another person." *Id*. at 1319. The Sixth Circuit reversed, holding that this order was invalid because the district court failed to follow the procedures set forth in 18 U.S.C. § 4246:

> In the instant case, the district court, in essence, sua sponte called a section 4246 hearing before the requisite findings were made by the director at [the federal psychiatric hospital]. . . . [A] section 4246 hearing cannot be conducted and a section 4246 commitment order cannot be issued until it has been certified to the court that the state *will not* accept the individual. Further, a certificate must be filed in, and a section 4246 hearing must be held in, the district in which the individual is confined, not the district in which he had initially been charged with an offense. . . . We hold, therefore, that by failing to adhere to the procedures outlined in section 4246, the district court lacked statutory authority to commit Baker and deprived Baker of his liberty without due process.

*Id*. at 1324 (emphasis in original).

The Government responds that, because § 4246 conditions a defendant's transfer to state custody on the requirement that the state provide "suitable" treatment and "security appropriate to the threat posed by the defendant," if state care turns out to be unsuitable—for example, because the state hospital releases the defendant prematurely—then the federal court has the authority to intervene to conduct a dangerousness hearing under § 4246 for the purpose of determining whether the defendant must be civilly committed to a federal facility. Appellee's Br. at 20. We cannot accept this argument. Under the Government's view, a federal district court presumably would be able, after the

defendant is transferred to state custody in the manner envisioned by § 4246(a), to monitor continuously not only his potential release from a state mental health facility but also the "suitability" of the treatment he receives at that facility. *Id.* The legislative history of the Insanity Defense Reform Act makes clear that the drafters of § 4246 did not intend for federal courts to play such an expansive role. This history instead reflects the general principle that "care of insane persons is essentially the function of the several states." *United States v. Shawar,* 865 F.2d 856, 859 (7th Cir. 1989); *see also* S. Rep. No. 98-225, at 250, *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3432. To carry out this intent, the statute was drafted narrowly, to make available a federal dangerousness hearing only in the "rare circumstance[]" that "State authorities will not institute civil commitment proceedings against a hospitalized defendant whose Federal sentence is about to expire." S. Rep. No. 98-225, at 250; *see also United States v. S.A.,* 129 F.3d 995, 1000 (8th Cir. 1997).

In this case, by contrast, state civil commitment proceedings *were* instituted and the defendant *was* transferred to state custody. After this has taken place, the federal district court simply no longer has the authority to order a § 4246 hearing. A contrary rule would impermissibly involve the federal judiciary in the surveillance of a state's treatment of its patients and its decisions regarding the proper handling of its mental health services, contrary to the limited purposes served by a § 4246 dangerousness hearing and the drafters' deliberate structuring of the statute to accomplish a delicate balance between federal and state governments in the provision of mental health care to federal defendants.

## Conclusion

For the reasons set forth in the foregoing opinion, the judgment of the district court is reversed.

R<small>EVERSED</small>

A true Copy:

      Teste:

              _____

              *Clerk of the United States Court of*
              *Appeals for the Seventh Circuit*