*137 KRAUSE, Circuit Judge,
concurring in part and dissenting in part:
Joaquin Foy’s case is nothing short of Kafkaesque and cries out to be heard by some court of competent jurisdiction. Despite not having stood trial and not having been convicted of a crime, Foy has been confined in federal penal institutions continuously since 2003. For the last six of these years, Foy’s civil commitment under the Insanity Defense Reform Act of 1984 (“IDRA”), 18 U.S.C. §§ 17, 4241^7, has continued despite the fact that a panel of experts repeatedly has recommended that he be released because he poses no danger to others if released under a prescribed regimen of care, and despite the fact that the IDRA expressly provides in such circumstances that a court “shall ... order that [the individual] be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment.” 18 U.S.C. § 4246(e)(2)(A). Foy has also raised serious concerns that the Government has not complied with the statutory safeguards designed to prevent indefinite federal incarceration under the IDRA, including the requirement that it exert all reasonable efforts to find a suitable placement for Foy in a state facility, such as a group home or similarly less restrictive setting.
For these reasons, while I agree with the majority that the District Court for the Eastern District of Pennsylvania lacked jurisdiction over Foy’s motion to vacate his civil commitment and have no doubt that the District Court will carefully consider whether the “interest of justice” standard requires a transfer to a court that does have jurisdiction, I see no reason not to expedite the process by remanding with instructions to transfer, as a transfer in this case is so clearly “in the interest of justice.” 28 U.S.C. § 1631. On this point, I respectfully dissent.[1]
I.
Whenever a federal court lacks jurisdiction over a civil action, § 1631 states in mandatory terms that the court “shall, if it is in the interest of justice, transfer such action” to another federal court in which the action could have been brought at the time it was filed. 28 U.S.C. § 1631 (emphasis added). This determination may involve undertaking some “limited review *138 of the merits” of the underlying claims. Phillips v. Seiter, 173 F.3d 609, 611 (7th Cir.1999). After all, it is not “in the interest of justice” to transfer a claim that plainly fails. See Adeleke v. United, States, 355 F.3d 144, 152 (2d Cir.2004). However, it is clear after reviewing the relevant statutory scheme and the facts of Foy’s case that his claims relate to significant potential statutory and constitutional violations and they should be decided by a court that is able to hear them.
Foy’s incarceration in federal detention centers under the IDRA began in 2003, when he was found to be incompetent to stand trial for verbally threatening a federal official.[2] Foy was initially incarcerated under 18 U.S.C. § 4241, which allows federal detention centers to hold criminal defendants for a recovery period while they are temporarily incompetent to stand trial. The IDRA further provides that federal detention may continue under 18 U.S.C. § 4246 at the end of this temporary recovery period if the defendant’s mental condition has not improved as to permit the proceedings to go forward. 18 U.S.C. § 4241(d). Thus, in 2005, the District Court ordered that Foy be detained under § 4246 because he was incompetent to stand trial and there was no substantial probability 'that his competency would be restored in the foreseeable future. Shortly thereafter, it granted dismissal of the sole criminal charge, and the criminal case against Foy was then closed. His detention under § 4246, however, continued.
But ongoing detention under § 4246 after the initial recovery period has elapsed is a last resort — it is only available if a person poses an ongoing danger to others in the “rare circumstances where [he] has no permanent residence or there are no state authorities willing to accept him for commitment.” S. Rep. 98-225, at 250 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3432; see also United States v. Lapi, 458 F.3d 555, 563 (7th Cir.2006) (observing that § 4246 is “drafted narrowly” and applies only in rare circumstances). The IDRA therefore contains two important statutory safeguards to prevent indefinite incarceration in a federal facility. First, the ongoing detention must be predicated on the person’s dangerousness if released, and, second, the Government has a continuing responsibility to find suitable arrangements for state custody and care. 18 U.S.C. § 4246(a), (d)-(e). Foy alleges that the Government has complied with neither because there is little evidence in the record that it has taken appropriate steps to effectuate an appropriate conditional release for Foy and it has not satisfied its duty even to seek, much less find, a suitable state placement for Foy.
A.
Turning to the first of these statutory safeguards, the IDRA requires that the Government file annual reports on a detainee’s mental condition to justify his ongoing commitment, 18 U.S.C. § 4247(e)(1)(B), and requires that, when a detainee is no longer dangerous under a prescribed regimen of medical care, the director of the detaining facility must initiate a discharge procedure with the district court, 18 U.S.C. § 4246(e), and the court that ordered the detainee’s civil commitment must order his conditional release, 18 U.S.C. § 4246(e)(2)(A). Since 2009, the annual reports by the Risk Assessment *139 Panel at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri have repeatedly concluded that Foy’s release would not create a substantial risk of danger to others or the property of others with the appropriate medication and care.[3] The Panel therefore has recommended in each of the last five reports available in the record that Foy be conditionally released to a group home or similarly structured entity in the community. Despite these recommendations, the facility holding Foy has not initiated proceedings to release him, and Foy remains detained.
The Government’s retort — that it lacks sufficient assurance Foy will fulfill his conditions of release because he wants an unconditional release and is unwilling now to sign a certification of future compliance — seems reasonable enough on first impression. Under inspection, however, it raises serious questions under the IDRA and the Constitution that warrant careful scrutiny by a court of competent jurisdiction.
First, how is predicating Foy’s release on his written agreement to the conditions of release permissible given the plain language of the IDRA? The statute states, in mandatory terms, that once the facility director has determined that a detainee will not pose a threat to society if released on a prescribed regimen of medical care, the director “shall promptly file a certificate to that effect” with the court that ordered civil commitment, 18 U.S.C. § 4246(e) (emphasis added), and thaty following a hearing to confirm the safety of conditional release, “the court shall ... order that [the detainee] be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment.” 18 U.S.C. § 4246(e)(2)(A) (emphasis added). The statute does not provide for and hardly seems to leave room for the imposition by a facility of its own requirement that a detainee agree in writing to abide by the conditions of release. Cf. Shalom Pentecostal Church v. Acting Sec’y U.S. Dep’t of Homeland Sec., 783 F.3d 156, 167 (3d Cir.2015) (striking as ultra vires an agency regulation imposing an additional requirement on criteria for entitlement to visa issuance on the ground that such requirement was inconsistent with the plain language of the statute).
Second, why doesn’t the IDRA itself squarely resolve the Government’s purported concerns that it lacks assurance of Foy’s future compliance with the conditions of his release or that those conditions somehow might be unenforceable without Foy’s signature on a document? An' enforceable court order would seem disposi-tive on this point, and the statute here expressly requires not only that the District Court “shall ... order that [the detainee] be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment,” but also that the court “order, as an explicit condition of release, that [the detainee] comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment.” 18 U.S.C. § 4246(e)(2)(A)-(B) (emphasis added).
Indeed, the position taken by the Government here — that a signed certification is somehow needed to ensure future compliance with the conditions of release— ironically was disavowed by the Government and repeatedly rejected by the courts in the criminal context, where, until its repeal in 1982, 18 U.S.C. §§ 4163-64, provided in similar terms for the mandatory release on specified conditions of in *140 mates who had served their full terms of imprisonment. In subsequent litigation over the enforceability of those conditions against inmates who had refused to sign or challenged the validity of pre-release certifications of compliance, the courts routinely sided with the Government that the absence of a signed form was irrelevant and the conditions were enforceable as part of the statutorily mandated release. See Robinson v. Willingham, 369 F.2d 688, 689 (10th Cir.1966) (“Congress has fixed the conditions attached to a mandatory release and those conditions are not effected by the releasee signing or failing to sign a release agreement.”); Hicks v. Reid, 194 F.2d 327, 329 (D.C.Cir.1952) (rejecting petitioner’s argument that his failure to sign a document setting forth the conditions of release relieved him of obligation to comply because the statute “not only created the right to release but also imposed conditions thereon” such that “[b]oth are mandatory and neither can be avoided by dissent”).[4]
In none of these cases did the inmate’s refusal to sign a document agreeing to abide by the conditions of release either provide a basis to delay the release mandated by the terms of the statute or render those conditions of release unenforceable. Nor today, as far as I can ascertain, is it the policy of the Bureau of Prisons to refuse to release an inmate who has served out his term of imprisonment because the inmate is unwilling to sign a written assurance that he will abide by the conditions of his supervised release — even if there is good reason to be concerned that the inmate will violate those conditions upon release. Thus, it may well be that a detainee’s “refusal to agree to such conditions signals that he would not regard himself as bound by them and forewarns of trouble to come if he is released.” Maj. Op. 136 n. 7. But when no such writing is -required for the release of a convicted defendant, a court of competent jurisdiction should consider whether it accords with the IDRA and the Constitution for that extra-statutory precondition to be imposed on civilly committed persons who have not been convicted of any crime.
Third, conditions of release from imprisonment are typically enforced as a consequence that follows from future non-compliance with those conditions, and not through indefinite detention unless and until an inmate commits in writing to abide by those conditions. See 18 U.S.C. § 3583(e)(3) (allowing for revocation of supervised release upon a finding that the defendant violated a condition of release). Consistent with this norm, the IDRA by its terms contemplates the possibility of future non-compliance with conditions of release and specifies a single mechanism to enforce those conditions; arrest and revocation of release if the facility to which the individual is released reports that the individual has failed to comply with the conditions. 18 U.S.C. § 4246(f). How then does a facility’s prophylactic enforcement — preempting any opportunity for non-compliance by refusing to certify a qualified detainee for conditional release as required under § 4246(e) — comport with *141 either the statute or the Constitution? After all, civilly committed persons remain entitled to due process, Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992); Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), and detaining such persons indefinitely on the basis of a requirement that is neither authorized by statute nor necessary to enforce the conditions of release might well be viewed as arbitrary and capricious government action, cf. Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 11-12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); Wolff v. McDonnell, 418 U.S. 539, 556-57, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).
The Government suggests, and the majority seems to find significant, that by insisting on unconditional release, Foy appears to have made a deliberate choice of no release over conditional release. Ap-pellee’s Br. 3, 54 n. 13; Maj. Op. 136 n. 7. But the argument proves too much, for while a rational actor might well go through the motions of signing a form necessary to secure his release from a federal prison, whatever his actual intentions, no one argues that Foy is making rational choices or is free of mental illness. Indeed, that is the very reason he has been recommended for conditional release and the reason that the IDRA speaks in mandatory terms that do not turn on the purported “choice” of the detainee. Regardless of whether a civilly committed individual irrationally insists on unconditional release or even irrationally prefers to remain in a federal prison over a less restrictive state facility, once he is determined not to pose a danger upon release with appropriate conditions (as six years of reports attest in Foy’s case), the' IDRA mandates that the facility director certify, 18 U.S.C. § 4246(e), and the District Court, upon confirmatory hearing, order that conditional release, 18 U.S.C. §§ 4246(e)(2)(A), 4247(h). In sum, arguably irrational choices of a person with mental illness, where irrelevant to the statutory qualifications for conditional release, cannot justify a facility director’s refusal to certify, much less a federal court’s disregard of the statutory mandate or its tolerance of deprivations of liberty greater than necessary. See Greenholtz, 442 U.S. at 11-12, 99 S.Ct. 2100; Wolff, 418 U.S. at 556-57, 94 S.Ct. 2963.
Fourth, even if it were deemed permissible to condition Foy’s release on his pre-release assent to the prescribed regimen of medical care, how is the Government’s interest in ensuring compliance with this condition (not to mention its presumable interest in reducing by at least one the ranks of the prison population) actually served by requiring Foy to go through the motions of signing some form saying that he promises to self-medicate? Indeed, even assuming the detainee is a rational actor, what meaningful assurance of future compliance would any detainee’s signature actually provide on the one form on which his release from prison depends? Instead, if the Government is truly interested in assuring Foy’s future compliance with the condition of continued medication, wouldn’t it make far more sense for it to expend de minimus resources identifying a less restrictive but controlled state facility to which Foy can be released and where his medication will be properly administered— the solution also mandated by the IDRA, see infra — than to deploy yet more prosecutors in yet another jurisdiction litigating, in effect, the legal significance of Foy’s failure to affix a virtually meaningless signature to a form document? Yet, as next discussed, despite the logic of this approach and despite the Government’s statutory obligation to pursue it, Foy raises a substantial claim that the Government has violated this IDRA requirement as well.
*142 B.
The IDRA also requires that the Government “shall continue periodically to exert all reasonable efforts to cause ... a State [where the person is domiciled or was tried] to assume such responsibility for the person’s custody, care, and treatment.” 18 U.S.C. § 4246(d). There is only a single reference in the record to an effort to have a State assume such responsibility for Foy’s treatment: a 2007 letter, from the Pennsylvania Office of Mental Health & Substance Abuse Services denying Foy entry to a Pennsylvania State Hospital for inpatient treatment. The Government acknowledged in 2007 that it was obligated by statute to contact the Commonwealth of Pennsylvania to request a transfer for Foy, but nothing in the record suggests that that effort was anything more than perfunctory or that the Government has made any effort whatsoever to meet this obligation since then. Foy thus alleges, pointing to substantial support in the record, that the Government has been violating his statutory rights under the IDRA.
Moreover, these are not garden-variety statutory claims. Because of the Government’s alleged violations of the IDRA, Foy has been subject to an ongoing and indefinite incarceration for years on end without a conviction and with the availability of less restrictive state facilities allegedly left unexplored. And as noted earlier, the circumstances of Foy’s continued civil commitment in federal custody raise significant statutory and due process concerns. See Foucha, 504 U.S. at 80, 112 S.Ct. 1780; Addington, 441 U.S. at 425, 99 S.Ct. 1804. Resolving these claims is clearly “in the interest of justice.”
II.
Foy may properly raise these challenges to his detention under the IDRA pursuant to 18 U.S.C. § 4247(h), which allows Foy’s counsel — given the refusal of the director of the facility where Foy was detained to file the required certificate of conditional release — to make a motion for a hearing to conditionally discharge Foy from his commitment, and the Government acknowledges that the District Court for the Western District of Missouri, the court that ordered Foy’s civil commitment in September 2007, would have jurisdiction over these claims under that section if this case is transferred. According to the Government, however, a transfer would be futile because the district court there “has repeatedly denied exactly the same motion that Foy wants to litigate here.” Appel-lee’s Br. 53. The record does not support that contention.
While Foy undoubtedly has filed numerous petitions for relief in the Western District of Missouri and elsewhere, in proceeding pro se in what the record suggests is all but one of those proceedings, Foy has not been able to coherently present the claims raised here, so other courts, understandably, have not reached the merits of those claims. See, e.g., Foy v. U.S. Gov’t, No. 15-1901, 2015 WL 2181410, at *2 (D.Minn. May 7, 2015) (“Foy’s petition for habeas corpus relief is, to say the least, difficult to follow. A good deal of the petition and accompanying documents consist of photocopies of books or magazine articles, none of which appears relevant to any possible claims under § 2241. Much of the remainder, assumedly written by Foy himself, is nearly incomprehensible.”); Foy v. Jett, No. 14-5063, 2015 WL 439614, at *1 (D.Minn. Feb. 3, 2015) (“Foy’s petition is difficult to decipher.”). In the District Court in this case, on the other hand, Foy had the benefit of a dedicated and diligent appointed counsel who painstakingly assembled Foy’s court and detention center records from across the country *143 and identified potential legal claims under the byzantine provisions of the IDRA. Counsel’s careful research and zealous advocacy enabled her to present substantial challenges to Foy’s ongoing incarceration for the first time in this Court. Thus, the issues presented here cannot be fairly characterized as the same ones that Foy has raised unsuccessfully in his pro se filings.
In addition, despite the majority’s implication otherwise, the issues presented here are not the same as those raised in Foy’s single prior counseled proceeding that was initiated in the Western District of Missouri on September 4, 2014 and dismissed shortly thereafter. While it is true that the district court there “denied Foy the relief he seeks here,” Maj. Op. 136 n. 7 (emphasis added), it is also the case, as reflected in the transcript of that proceeding, that Foy’s appointed counsel appears to have accepted the Government’s contention that Foy was required to agree to the conditions of his release as a prerequisite to conditional release and therefore focused his efforts on trying to elicit on the record Foy’s agreement or explanation for disagreement, see Supp.App. 178-85. In short, the Western District of Missouri has never been presented with the statutory and due process arguments raised by Foy’s counsel in the case that gives rise to this appeal.
Nor is transfer rendered futile by the theoretical possibility that Foy could initiate a new proceeding in Missouri, with a successive motion seeking release under § 4247(h). Even assuming Foy were somehow able to overcome the procedural and logistical hurdles associated with successive filings, he assuredly will not be able to present the substantial issues raised by this case if left to proceed pro se, and his chances of being appointed counsel or having his arguments seriously considered on the merits appear vastly diminished in the absence of a transfer. Indeed, the best case scenario, absent a transfer, is that Foy, proceeding pro se or somehow securing appointed counsel, files a new petition re-raising the claims argued here; those arguments are cogently presented to the District Court for the Western District of Missouri; and that court eventually grants Foy’s conditional release — a process that would entail months, if not years, of additional delay in his conditional release. Worse, it may never come to pass, and no court will consider the merits of Foy’s significant statutory and constitutional claims. Transfer is simply the most efficient and just way of ensuring that an individual, who in our Circuit received the benefit of devoted counsel, has the opportunity to have his claims expeditiously addressed in the appropriate jurisdiction.
Finally, there is no merit to the Government’s argument that we should decline to order a transfer because Foy did not request that relief in this case. As even the majority recognizes, given that Foy has contended that the District Court here had jurisdiction, his argument of course has been that a transfer was not necessary. Maj. Op. 136 n. 6. In any event, the statutory language of § 1631 is compulsory and requires that the court “shall, if it is in the interest of justice, transfer such action” to a court of competent jurisdiction, even if it has not been asked to do so by either party. See Rodriguez-Roman v. I.N.S., 98 F.3d 416, 423 n. 9 (9th Cir.1996) (“The duty imposed on the court is mandatory. It must determine whether transfer is in the interests of justice.”); see also Phillips, 173 F.3d at 610.
In sum, I believe that Foy has raised substantial questions about fundamental deprivations of liberty and due process extending over many years, and I do not see the benefit of the added delay inherent *144 in additional briefing on the transfer issue in the District Court, much less a possible appeal back to this Court. Rather, the “interest of justice” would be best served by a swift transfer to the Western District of Missouri for the district court there to determine whether Foy’s statutory and constitutional rights have been violated, and, if they have, the proper remedy for these violations.
For the above-stated reasons, I would remand this case with instructions to transfer pursuant to 28 U.S.C. § 1631 and thereby ensure that Foy has the opportunity, without further delay, to have his case heard by a court of competent jurisdiction.

. Although the majority remands for the District Court to decide the question of transfer in the first instance, it oddly proceeds to suggest in dictum that transfer may not be not warranted (1) because Foy is not entitled to the unconditional release he would prefer, but only to conditional release; (2) because, in the majority's view, transfer would be futile as the Western District of Missouri has denied unconditional release in the past; and (3) because the hypothetical possibility remains that Foy could initiate a new action in Missouri and attempt to file a successive motion pro se or through counsel if he can obtain one. Notably, however, the majority does not dispute that, as set forth in detail below, under the IDRA, Foy’s conditional release on this record appears to have been mandatory and thus to have been unlawfully denied, and Foy has raised compelling statutory and due process arguments here, concerning the Government’s imposition of an extra-statutory condition of his express agreement to the conditions of release, that have never been presented to the Western District of Missouri. For these reasons and those described more fully below, the "interest of justice” standard leaves no room for debate that the courts of our Circuit should promptly transfer this action to the Western District of Missouri so that the merits of Foy’s substantial claims can be considered without further delay by a court of competent jurisdiction; the matter is recognized by the transferee court as warranting appointment of counsel; and Foy's six-plus years of what appears to be unauthorized detention are not prolonged indefinitely by Foy’s inability to overcome procedural barriers to successive filings or his inability to present coherent arguments in pro se motions about the very serious issues presented by this case.

. The IDRA is phrased in terms of "treatment in a suitable facility,” but this "treatment” period has been repeatedly equated to incarceration. See Henry v. Ciccone, 440 F.2d 1052, 1054 (8th Cir.1971) (Clark, J., Associate Justice, United States Supreme Court, sitting by designation) (“Again and again we have recognized that the [federal medical center] is a penal institution and that one confined there suffers incarceration.”).

. Foy states in his brief, which was not filed under seal, that the annual Risk Assessment Review Reports, which were filed under seal, reach this conclusion. Appellant’s Br. 12.

. See also McMillan v. Parker, 254 F.Supp. 365, 366 (M.D.Pa.1966), aff'd, 378 F.2d 444 (3d Cir.1967) (per curiam) ("The mere fact that petitioner did not sign the certificate of mandatory release will not relieve him of the conditions imposed on said release.... His release was subject to those conditions regardless of whether the certificate was signed or not.”); Donahue v. U.S. Parole Comm’n, 603 F.Supp. 1310, 1312 (S.D.Fla.1985) ("Plaintiff's refusal to sign his Certificate of Mandatory Release is irrelevant to his being subject to the terms and conditions enunciated therein. Congress has fixed the conditions attached to a mandatory release and those conditions are not affected by the failure or refusal of the releasee to sign the release agreement.”).